**Laterrence Duane NEAL, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 2001–SC–0296–MR.**

Supreme Court of Kentucky.

Jan. 23, 2003.

Daniel T. Goyette, Frank Wm. Heft, Jr., Jefferson District Public Defenders, Elizabeth B. McMahon, Assistant District Defender, Louisville, Counsel for Appellant.

A.B. Chandler, III, Attorney General, Courtney J. Hightower, Brian T. Judy, Susan Roncarti, Assistant Attorneys General, Frankfort, Counsel for Appellee.

Opinion of the Court by Justice
WINTERSHEIMER.

This appeal is from a judgment based on a jury verdict which convicted Neal of wanton murder, first-degree robbery and as a second-degree persistent felony offender. He was sentenced to life in prison.

The questions presented are whether prison letters were erroneously admitted into evidence; whether the testimony of a co-defendant was proper; whether purported impeachment evidence was correctly excluded; whether an alleged reference to a polygraph examination was reversible error; whether the jury was properly instructed during the guilt phase; whether the playing of videotapes from the guilt phase at the resentencing was proper; whether Neal was entitled to a mistrial and a discharging of the jury; whether information concerning a prior misdemeanor was correctly admitted into evidence; whether Neal was denied the opportunity to present mitigating evidence; ·whether the trial judge correctly answered questions from the jury; whether the jury improperly considered an adjudication from juvenile court during the sentencing phase; and whether the jury was properly instructed on concurrent sentencing.

The victim, a minister at Cable Missionary Baptist Church, was shot six times at close range inside his Louisville apartment while being robbed. Neal and Strong were both charged with murder and first-degree robbery. Separate trials were ordered for the two defendants. Strong pled guilty and testified against Neal at his trial.

Following a ten-day trial, the jury convicted Neal of murder, first-degree robbery and as a second-degree persistent felony offender. The first sentencing jury was unable to reach a verdict. A second jury was empaneled and sentenced Neal to life for the murder charge and twenty years for the robbery charge which was enhanced to life on account of the second-degree persistent felony charge. This appeal followed.

## I. Jail Letters

Neal argues that the trial judge committed reversible error by permitting the Commonwealth to introduce prejudicial letters in violation of his discovery orders and the Kentucky Rules of Evidence. Although unsigned, the first letter was apparently written by Neal to Strong to coach him in his testimony at the suppression hearing. The second letter was the response of Strong. The third letter was also unsigned and was allegedly written by Neal to Strong after the latter negotiated a deal, attempting to convince him the prosecutor would double-cross him.

Fax cover sheets indicate that the Commonwealth received the first two letters on April 25, 1997, and the third letter on July 29, 1999. Despite a September 1, 1999 order confirming the Commonwealth would file the letters as supplemental discovery within two weeks, it did not do so until October 11, 1999. On appeal, the Commonwealth concedes that it was late in turning the letters over, but maintains that

Neal had access to the letters three weeks prior to trial and had ample opportunity to develop his trial strategy.

In matters dealing with discovery, it is within the discretion of the trial judge to permit the discovery or inspection of materials not previously disclosed, grant a continuance, or prohibit the party from introducing into evidence the material not disclosed, or he may enter such other orders as may be just under the circumstances. RCr 7.24(9); *Berry v. Commonwealth*, Ky., 782 S.W.2d 625 (1990). Here, Neal declined the offer of the trial judge for a continuance and he cannot now complain about the decision he made. See *Berry, supra.* Reliance by Neal on *James v. Commonwealth*, Ky., 482 S.W.2d 92 (1972), is misplaced. Unlike the situation presented in this case, in *James, supra,* the evidence in question was never turned over to the defendant. Furthermore, *James* did not suggest that exclusion was the proper remedy. Under all the circumstances, Neal has not demonstrated any prejudice which would require reversal.

■ Neal also argues that the letters were inadmissible pursuant to KRE 404(b) and that the Commonwealth failed to comply with the notice requirement under KRE 404(c). After careful review of the record, it is clear that this argument was not presented to the trial judge and is not preserved for appellate review. Neal will not be permitted to feed one can of worms to the trial judge and another to the appellate court. See *Kennedy v. Commonwealth*, Ky., 544 S.W.2d 219 (1976). The trial judge did not err in allowing the Commonwealth to introduce the letters.

## II. Testimony of Strong

■ Neal contends that the trial judge committed prejudicial error by admitting the testimony of Strong. He raises three issues related to this claim which we will address separately. Neal maintains that the misconduct of the Commonwealth violated his constitutional rights to due process and a fair trial. According to Neal, the misconduct occurred when the Commonwealth blocked the access of his defense counsel to Strong until after it had concluded its own private interview with him. This issue is completely without merit. Strong had the right to speak with any party he desired. The Commonwealth did not improperly exclude defense counsel from its interview with Strong.

*Yates v. Commonwealth*, Ky., 958 S.W.2d 306 (1997), provides that the prosecution must supply the defense with a copy of any witness statement, but it also contemplates that defense counsel has the choice of conducting his own separate interview of the witness. There is nothing in *Yates* indicating that defense counsel has a right to be present during the interview of a witness by the prosecution. *Taylor v. Commonwealth*, Ky., 545 S.W.2d 76 (1976), does not state that one of the duties of defense counsel is to be present at any of the interviews with potential witnesses by the prosecution. *Accord United States v. Ash*, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973).

■ Next, Neal claims that Strong should not have been permitted to testify to his (Neal's) suppressed statement. Before testifying, Strong was admonished by the trial judge not to mention the statement made by Neal to the police because it had been suppressed. During cross-examination by defense counsel, Strong made several references which indicated that Neal had given the police information and had blamed him. On re-direct, the Commonwealth was permitted to ask Strong if there was another important reason why he made his statement to the police. Strong indicated that the reason he made the statement was because Neal had given

the police information. He confirmed that Neal blamed him before he made his own statement.

■ The trial judge did not err in permitting this testimony because defense counsel opened the door to this line of questioning. In any event, the error, if any, was certainly harmless. RCr 9.24. The testimony Neal now complains of was first elicited during cross-examination by his defense counsel and was cumulative.

■ Neal also complains that Strong should not have been permitted to testify concerning his own suppression hearing. He asserts that this information along with the references made by Strong concerning why he made a statement, would allow the jury to conclude that he (Neal) made an incriminating statement that was thrown out on a legal technicality. This issue is purely speculative and completely without merit. Under all the circumstances, the trial judge did not commit error in allowing the testimony of Strong.

## III. Exclusion of Impeachment Evidence

Neal argues that the trial judge committed prejudicial error by excluding evidence that would have allegedly impeached the trial testimony of Strong. He wanted to introduce a tape of Strong's suppression hearing to show that he had a pattern of blaming him as he had blamed him for another shooting. Neal also sought to introduce the testimony of the two victims from the earlier shooting that they had been shown a photograph of Neal during the identification process.

The trial judge ruled that this testimony was not admissible because it was irrelevant and collateral to the ultimate issue. He did allow defense counsel to put on the testimony at issue by avowal. The testimony of the two victims from the earlier shooting was introduced from Strong's suppression hearing.

■ After reviewing the avowal testimony, we must conclude that the trial judge properly excluded the evidence. It is clear that Neal was not seeking to impeach Strong with his prior testimony because Strong never directly blamed Neal. Instead, Neal was trying to impeach Strong with the actions and trial strategy of his defense counsel at a suppression hearing in another matter. There, defense counsel was only trying to shift the blame away from Strong.

The evidence sought to be introduced by Neal was not admissible except for the fact that Strong had allegedly stated on cross-examination that he did not try to blame the shootings in the earlier case on Neal. In seeking to prove that Strong tried to blame Neal for the earlier shootings, Neal was attempting to introduce collateral impeachment evidence. The trial judge correctly excluded the evidence. *Cf.* R. Lawson, *The Kentucky Evidence Law Handbook* § 4.10 at 93 (3d ed. Michie 1993); 3A Wigmore *Evidence in Trials at Common Law,* 956–59 (Chadborne Rev. 1970).

## IV. Polygraph

Neal claims that the Commonwealth tainted the jury by making veiled references to a polygraph examination. He asserts that this occurred when the Commonwealth asked a witness if he gave a statement to an expert interrogator. Neal concedes that this issue is not preserved but seeks review pursuant to RCr 10.26.

■ The word polygraph was never mentioned. Reliance by Neal on *Morgan v. Commonwealth,* Ky., 809 S.W.2d 704 (1991), is misplaced. The jury was not tainted by the vague reference to an "expert interrogator." There was no error.

## V. Instructions Guilt Phase

Neal argues that the trial judge committed reversible error by failing to give proper instructions in the guilt phase. He raises several issues related to this claim which we will address separately.

a) The complicity instruction did not deny Neal a unanimous verdict. The robbery instruction regarding complicity did not contain alternative theories that were not supported by the evidence. Any rational jury could have construed the evidence to show a command and a conspiracy. Complicity was defined in an instruction, 4(A), as follows:

> **Complicity**—Means that a person is guilty of an offense committed by another person when, with the intention of promoting or facilitating the commission of the offense, he solicits, commands, or engages in a conspiracy with such other person to commit the offense, or aids, counsels, or attempts to aid such person in planning or committing the offense.

■ Neal had given Strong a .25 caliber gun the day before the robbery and murder occurred. Strong testified that Neal had come to his apartment and asked him to help in the robbery. The evidence indicates that Neal instructed Strong during the robbery. When Strong was questioned about why he followed Neal, he replied that Neal was his friend and that they did everything together. The jury could reasonably infer that Neal had put pressure on Strong so as to dominate and control him. Strong testified that he did not even know the victim, but that he was very close to Neal. Clearly, the jury could believe that Strong felt compelled to do whatever Neal asked.

■ Conspiracy, as envisioned by the statute governing complicity, does not necessarily require detailed planning and a concomitant lengthy passage of time. All that is required is that the defendants agreed to act in concert to achieve a particular objective and that at least one of them committed that objective. *Commonwealth v. Wolford*, Ky., 4 S.W.3d 534 (1999). There was sufficient evidence of a conspiracy which would lead to a reasonable interpretation that Neal and Strong shot the victim so they could rob him. The instructions were not prejudicial and Neal received a unanimous verdict.

■ b) The evidence did not justify an instruction on first-degree manslaughter with a mitigating instruction regarding extreme emotional disturbance. Neal alleges that because Strong testified that the victim had come on to Neal in a sexual way, that Neal was entitled to the instructions. After this alleged occurrence, Neal left, planned the robbery, and returned to carry it out. It is incredible to believe that Neal was so enraged and disturbed as to act uncontrollably and then came back sometime later to rob the victim. There was no substantive evidence that this robbery and murder were perpetrated as a result of EED. The trial judge properly denied the requested instruction.

■ c) The evidence did not justify jury instructions on facilitation of murder and facilitation of robbery. Although a trial judge has a duty to prepare and give instructions on the whole law of the case, including any lesser included offenses which are supported by the evidence, ... that duty does not require an instruction on a theory with no evidentiary foundation.... An instruction on a lesser included offense is required only if, considering the totality of the evidence, the jury might have a reasonable doubt as to the defendant's guilt of the greater offense, and yet believe beyond a reasonable doubt that he is guilty of the lesser offense. *Gabow v. Commonwealth*, Ky., 34 S.W.3d 63 (2000)

*citing Houston v. Commonwealth,* Ky., 975 S.W.2d 925 (1998).

Criminal facilitation occurs when a defendant, with no intent to promote or commit the crime himself, provides the means or opportunity for another to do so. KRS 506.080; *Gabow, supra.* Neal did not testify at trial. The evidence at trial clearly established that Neal planned and directed Strong in the robbery. Neal has failed to offer any credible evidence that would allow the inference that he knowingly assisted the robbery and murder but was indifferent to its success. The trial judge correctly declined to instruct the jury on the offense of criminal facilitation as a lesser included offense of murder and robbery.

 d) The evidence did not justify an instruction on reckless homicide. Neal fails to offer any credible evidence which would have entitled him to such an instruction. Armed with weapons, Neal and Strong went to the apartment of the victim and shot him at close range approximately six times. The trial judge properly denied the requested instruction.

## VI. Videotapes

 The trial judge did not abuse his discretion in allowing the use of videotapes to inform the jury of the underlying facts of the case. A new jury was impaneled for a retrial of the penalty phase when the first jury was unable to reach a unanimous decision regarding what sentence to impose for wanton murder. The trial judge invited the parties to prepare a summary of the facts in this case, but no agreement was reached. In lieu of a summary, the trial judge decided that an edited version of the trial on videotape was the best solution. The edited videotapes excluded bench conferences, opening statements and closing arguments. Neal claims this procedure violated his due process and confrontational rights under both the federal and the Kentucky constitutions. We disagree.

In the capital penalty phase, the only aggravator was that the murder was committed while Neal was engaged in first-degree robbery. Neal was already convicted of capital murder and first-degree robbery. Thus, because no new finding of fact was required for the aggravator there was no due process or confrontation violation. *Cf. Specht v. Patterson,* 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967).

As for his truth-in-sentencing and persistent felony offender phase, the Commonwealth sought to prove that Neal was a second-degree persistent felony offender which did require new finding of facts. To this end, the Commonwealth called a witness who testified about these facts. This witness was available for cross-examination. Neal had every opportunity to be heard and confront the witnesses against him. Thus, there were no due process or confrontation violations in this case.

The playing of the videotape from the guilt phase during the second penalty phase was proper. Live testimony is not required. See *Boone v. Commonwealth,* Ky., 821 S.W.2d 813 (1992) which instructed that written summaries are often the best method. Whatever method is used, it is essential that the second jury be provided with enough background information about the facts of the crime to assist in an appropriate punishment. Such was accomplished here. No error occurred.

## VII. Parole Information

Neal contends that the trial judge erred in refusing to grant a mistrial where the venire panel was tainted with inadmissible parole information. We disagree.

 A mistrial is justified only when a "manifest necessity for such an

action or an urgent or real necessity" appears in the record. *Skaggs v. Commonwealth,* Ky., 694 S.W.2d 672, 678 (1985). It is within the trial judge's discretion whether a mistrial should be granted, and his decision should not be disturbed, absent an abuse of discretion. *Clay v. Commonwealth,* Ky.App., 867 S.W.2d 200, 204 (1993). During jury selection for the retrial of the penalty phase, a juror expressed concern about parole eligibility information. The trial judge instructed the jurors that they may or may not have that information before deliberating but that they must be able to consider the entire penalty range. Later, a second juror expressed a similar concern and the trial judge repeated his previous instruction. Although the jurors expressed concern over parole eligibility, they were not given information about it until the truth-in-sentencing and persistent felony offender penalty phase. No error occurred. The trial judge properly overruled the motion by Neal for a mistrial and discharging of the jury.

### VIII. Destroyed Firearm

■ Neal argues that the trial judge erred by allowing the Commonwealth to introduce testimony concerning the destruction of a firearm confiscated during his arrest for disorderly conduct. He contends that it was irrelevant and prejudicial information. The testimony may have been irrelevant, but the introduction of the testimony was harmless error. See *Abernathy v. Commonwealth,* Ky., 439 S.W.2d 949 (1969); RCr 9.24.

### IX. Penalty Mitigation

Neal asserts that the trial judge committed reversible error by depriving him the opportunity to present important mitigating evidence during the penalty phase. He raises two issues regarding this claim which we will address separately.

■ Neal maintains that he should have been allowed to introduce the plea offers made by the Commonwealth. In *Haight v. Commonwealth,* Ky., 41 S.W.3d 436 (2001), we recognized a split of authority on the issue which had yet to be decided. We stated the following in *Haight, supra:*

Haight maintains that defense counsel was ineffective by not introducing evidence during the penalty phase that the Commonwealth had previously entered into a plea bargain. He asserts that he has a right to have the jury which sentenced him consider mitigating evidence. The question of whether a defendant has the right to introduce evidence of a withdrawn guilty plea as mitigating evidence has not been decided in the Commonwealth. There appears to be a split of authority on the issue. See Wright & Graham, *Federal Practice and Procedure:* Evidence § 5348 (1980). In terms of our rules, there is a potential conflict between KRE 410, which provides that withdrawn guilty pleas are not admissible against the defendant, and KRE 408, which provides that compromises and offers of compromise are inadmissible. The Commonwealth argues that Haight's prior guilty plea is inadmissible under KRE 408. The argument is not without merit or support. See *Id.* On the other hand, Haight argues that KRE 408 is limited to civil cases. See *United States v. Baker and Mazzilli,* 926 F.2d 179 (2nd Cir.1991), construing KRE 408.

The question is really whether a plea offer is mitigating evidence. It is not. The frequently cited *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), determined that a defendant should not be precluded from considering as a mitigating factor, any aspect of the defendant's character or record and any of the

circumstances of the offense that the defendant offered as a basis for a sentence less than death. Here, the sentence was life in prison. In Footnote 12 in *Lockett, supra*, the U.S. Supreme Court also noted that "nothing in this opinion limits the traditional authority of the court to exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of his offense."

A plea offer by the prosecution is not an aspect of the character of the defendant, nor is it a circumstance of the offense, or a mitigating aspect of the record of the defendant. The only pertinent inquiry for the jury in this case was what the jury believed was the appropriate punishment for the crimes.

Evidence about the plea offer made by the prosecutor is not mitigating evidence under the Eighth Amendment to the Federal Constitution, or *Lockett*. The sentencing recommendation of the prosecutor is not an aspect of Neal's character or the circumstances of the offense. In *Clark v. Commonwealth*, Ky., 833 S.W.2d 793 (1991), we held that no party may present evidence which would lead the jury to believe that the responsibility for determining the appropriate sentence rests elsewhere. The plea offer could create considerable doubt as to whether the penalty was imposed because the prosecutor offered it to the defendant. In the final analysis, it is the jury that must determine the appropriate punishment and the proper sentence.

■ Neal also complains that the Commonwealth should have been precluded from rebutting his mitigating evidence of rehabilitation with evidence of disciplinary write-ups that Neal incurred while in jail. At the penalty phase, Neal sought to introduce evidence regarding his participation in and completion of several classes in the Teen Challenge Program while incarcerated in support of his claim that he was capable of rehabilitation. The Commonwealth responded that it intended to introduce records of any disciplinary write-ups that Neal incurred in jail as rebuttal evidence. The trial judge ruled that the introduction of that rebuttal evidence would have been allowed. Neal did not introduce the information but offered it by way of avowal. We agree with the trial judge that the information the Commonwealth intended to introduce would have been admissible as rebuttal evidence.

### X. Questions by Jury

■ Neal next contends that the trial judge committed prejudicial error by improperly answering the questions of the jury. This claim is totally without merit. While deliberating the jury submitted the following question: "is it possible for us to be told of Mr. Strong's sentencing for this murder and robbery?" The trial judge responded, "No, the Court cannot answer this question. For now, you must decide Mr. Neal's sentence completely independently of any sentence Mr. Strong received."

The trial judge properly instructed the jury that it was to decide the sentence completely and independently of any sentence Strong received. *Commonwealth v. Bass*, Ky., 777 S.W.2d 233 (1989), held that neither details of plea bargaining arrangements with a co-defendant nor the criminal record of the co-defendant are admissible during the penalty phase. There was no error.

The jury also posed another question: "What is the definition of "life" in legal terms? i.e., (sic) is he eligible for parole in so many years? If so, how many? May we see you judge?" The trial judge responded:

Again, the Court cannot answer this specific question. With the obvious exception of the choice of life without the possibility of parole until Mr. Neal has served a minimum 25 years of his sentence, you must decide Mr. Neal's sentence completely independently of any consideration of parole, of what parole might mean or how that may effect (sic) the punishment you fix. Also, I cannot talk to you during your deliberation. All I can do is answer your written questions after consulting with the attorneys.

The trial judge properly answered this question. There was no error.

### XI. Juvenile Conviction

The trial judge did not err by permitting the jury to consider the juvenile conviction during the sentencing phase. KRS 610.320(4) and KRS 532.055(6) were not improperly applied retroactively. *Manns v. Commonwealth,* Ky., 80 S.W.3d 439 (2002).

### XII. Instruction on Sentences

██ The trial judge did not commit reversible error by instructing the jury on the law as it relates to consecutive versus concurrent sentences. During discussion on this issue, the parties agreed that it would be proper to instruct the jury that any sentence imposed for the robbery and the PFO would run concurrent with Neal's life sentence for murder. Thus, any error was waived by Neal.

██ In any event, the instruction did not mislead the jury regarding its role in the sentencing process. The law in Kentucky is that a term of years merges with

a life sentence. *Cf. Yarnell v. Commonwealth,* Ky., 833 S.W.2d 834 (1992). The information given was a correct statement of the law. There was no error.

The decision of the jury and the judgment of conviction are affirmed.

LAMBERT, C.J., COOPER, GRAVES and JOHNSTONE, JJ., concur. KELLER, J., concurs by separate opinion and is joined by STUMBO, J., as to the analysis of Part IX, but would reverse the judgment for the reasons stated in her separate dissenting opinion.

Concurring Opinion by Justice KELLER.

Although I concur in the result reached by the majority opinion, I write separately as to Part IX, in which the majority addresses Appellant's contention that the trial court committed reversible error when it prevented Appellant from introducing, as "mitigating evidence" in his KRS 532.025 capital sentencing phase, written copies of two (2) previous plea offers extended by the Commonwealth. While I agree with the majority's bottom-line conclusion that the trial court properly excluded this evidence, I observe that the majority: (1) for the second time—the first being *Haight v. Commonwealth* [1]— declines to address squarely whether KRE 408 or KRE 410 excludes such evidence; (2) appears to leave the door open to the possibility that KRE 408 excludes such evidence—a view with which I have previously expressed my disagreement [2]—by quoting language from *Haight* describing the KRE 408 argument as "not without merit or support"; [3] (3) strays from this

**1.** See *Haight v. Commonwealth,* Ky., 41 S.W.3d 436 (2001).

**2.** *Id.* at 449–451 (Keller, J., dissenting from order denying petition for rehearing and modifying opinion).

**3.** *Majority Opinion,* 95 S.W.3d 843, 852 (2003), *quoting Haight v. Commonwealth, supra* note 1 at 447–8.

Appellant's allegation of error by addressing whether the failure to admit this evidence violated Appellant's constitutional rights; and (4) erroneously characterizes the Court's holding in *Clark v. Commonwealth*.[4] Accordingly, I write separately to explain the reason why I conclude that the trial court properly excluded evidence of the Commonwealth's plea offers.

The Kentucky General Assembly has designed a constitutionally-adequate capital sentencing procedure that individualizes the capital punishment decision in part by permitting the introduction of "additional evidence in extenuation, mitigation, and aggravation of punishment"[5] after a defendant is found guilty of a capital offense. In his brief on appeal, Appellant does not cite us to either the federal or state constitution, and instead argues only that he was permitted to introduce the Commonwealth's plea offer under the procedure set forth in Kentucky's capital sentencing statute. Previously, I outlined an argument as to the relevance of such evidence[6] in the hopes of nudging the Court into addressing this relevancy question. However, now that we have actually reached the issue, I conclude that such evidence is inadmissible in this context because the Commonwealth's plea offer does not constitute "additional evidence in extenuation, mitigation, and aggravation of punish-

ment" under KRS 532.025(1)(a) nor does it relate to any of the statutory mitigating circumstances. Kentucky's capital sentencing statute contemplates the introduction of evidence concerning the defendant's character or criminal record and the circumstances surrounding the offense.[7] Because the evidence that Appellant wished to introduce pertains to none of those subjects, it is not, in my view, "evidence in extenuation, mitigation, and aggravation of punishment," and the trial court thus properly excluded it.

STUMBO, J., joins this concurring opinion as to its analysis of Part IX, but would reverse the judgment for the reasons expressed in her separate dissenting opinion.

Dissenting Opinion by Justice
STUMBO.

Respectfully, I dissent from Section VI. of the majority opinion in which the Court finds no error in the use of edited videotapes to present the Commonwealth's case during the penalty phase. I do not state here that this use of video rather than live testimony is in itself erroneous. This Court has approved of this method during retrial as it is both efficient and less costly than recalling every witness.

---

4. Ky., 833 S.W.2d 793 (1991). Contrary to the majority's suggestion that, in *Clark,* "we held that no party may present evidence which would lead the jury to believe that the responsibility for determining the appropriate sentence rests elsewhere," *Majority Opinion, supra* note 3 at 853, the Court actually found reversible error when a prosecutor's *comments* during opening and closing statements left the jury with the impression that "the awesome responsibility *of determining the appropriateness of death* rests elsewhere." *Clark v. Commonwealth, supra* at 796 (emphasis added).

5. KRS 532.025(1)(a).

6. *Haight v. Commonwealth, supra* note 1 at 451 n. 11 (Keller, J., dissenting from order denying petition for rehearing and modifying opinion).

7. *Jacobs v. Commonwealth,* Ky., 870 S.W.2d 412, 419 (1994) ("This provision [KRS 532.025] would permit the trial court to submit redeeming evidence to the jury. However, we believe the evidence must contain facts or a qualified opinion bearing on the defendant's character, prior record or circumstances of the offense, or relative to one of the specified statutory mitigating circumstances.").

However, in the case at bar, some of the problems inherent in videotaped trial proceedings so adversely affected Appellant's sentencing phase that it must be repeated. Jurors fell asleep during the proceedings on at least two occasions, a fact noted by defense counsel, the prosecutor and the trial judge. Demonstrative exhibits used by the videotaped witnesses, such as diagrams and a model of the crime scene, are difficult to interpret on the video. Also, narration of a crime scene video made by a testifying police officer was not recorded and, thus, the sentencing jury did not hear it.

When we spoke approvingly of the use of videotaped proceedings as evidence on retrial, we noted that "the second sentencing jury [is] in a position no different from the first jury as it embarked upon the penalty phase." *Skaggs v. Commonwealth*, Ky., 694 S.W.2d 672, 679 (1985). That cannot be said of these particular proceedings. I would reverse and remand for a new sentencing phase.