Clawvern JACOBS, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 89–SC–703–MR.

Supreme Court of Kentucky.

Jan. 31, 1994.

Donna L. Boyce and Rebecca Ballard Diloreto, Asst. Public Advocates, Department of Public Advocacy, Frankfort, for appellant.

Chris Gorman, Atty. Gen., Ian G. Sonego, and Kent Young, Asst. Attys. Gen., Crim. Appellate Div., Capital Litigation Branch, Frankfort, for appellee.

REYNOLDS, Justice.

Clawvern Jacobs appeals from a judgment based on a jury verdict which convicted him of capital murder, kidnapping, and attempted first-degree rape. He was sentenced to death for capital murder, life imprisonment for the charge of kidnapping, and 20 years on the charge of attempted rape in the first degree.

The charges contained in the indictment were for the murder, kidnapping, and attempted rape of Judy Howard, a student at Alice Lloyd College. The prosecution presented evidence that the victim, while walking alone back to her dormitory at the college, was approached by Jacobs. She was held, led to appellant's truck and forced inside the vehicle. Campus Police and the Kentucky State Police were called and subsequently Troopers Catron and Woods located Jacobs, sitting in his truck, on Smith Branch Hollow Road about seven miles away from the site of the abduction. Jacobs related to the officers that three or four persons had driven out of the mountains in a pickup truck, confronted and "whipped" him and taken the girl away. Howard's nude body was found down an embankment 60 feet from appellant's truck. The cause of death was blunt force head injuries. Jacobs was arrested and placed in Trooper Woods' cruiser. A bottle of pills was taken from appellant and the contents, as analyzed, revealed that the various pills were antihistamines, Valium, ulcer medication and high blood pressure medication. Various personal items were found in the roadway around appellant's vehicle, including a girl's wrist chain, cigarette lighters, plastic combs and a hair brush. Additional items of evidence were collected from the cab of Jacobs' truck and included a pair of lady's blue jeans, a white blouse, a white bra, keys with identification of the name "Judy" thereon, and a tan jacket with an "Alice Lloyd College" identification tag of Judy Ann Howard in the right pocket.

Prior to the related occurrences, Jacobs went into the store of Claude Gibson to obtain gasoline and his parting comment was

"let's go find us a woman" or "let's go get us a woman." Appellant drove away from the gas station toward the college which was one mile away.

Jacobs, through counsel, raises 42 assignments of alleged error in this appeal. We have reviewed all issues presented by Jacobs and this opinion will concentrate on the trial judge's refusal to grant a change of venue; appellant's right to present his defense on the merits, which was denied by counsel's presentation of an insanity defense over appellant's objections; and use of attempted rape as a nonstatutory aggravator. As retrial will occur, we will address a fundamental fairness issue and the use of the term "recommend" in addressing juries as to death sentence responsibilities. Allegations of error which we have considered to be without merit will not be herein addressed.

## I. *VENUE*

■ From the totality of the record, the build up of prejudice commences to crystalize, then becomes clear and apparent. This murder was described by county officials as one of the most brutal in Knott County history. The initial and subsequent news reports described Jacobs' conviction of a similar slaying in 1974, and his release after such conviction when the earlier crime was overturned on appeal. Developments in this awaited trial permeated the media to such an extent that curbstone opinions, not only as to appellant's guilt, but even as to what punishment he should receive, were solicited and recorded. The force of adverse publicity gave impetus to the excitement and fostered prejudice among the people of the community. In fact, one of the public fund raising events to aid in Jacobs' prosecution raised $2,922.

The petition for change of venue was overruled. The public opinion survey/poll which was filed with the record indicated that in 100 calls, 98 persons had read or heard about the crime. Eighty-nine thus polled were aware of appellant's name; 73 knew that he had been in prison previously, and 60 were aware of that charge. Ninety-three persons had heard both radio and television stories, some up to at least 100 such reports. Eighty-five considered Jacobs guilty, while 15 did not respond or stated they did not know. Sixty-five thought Jacobs would receive a fair trial in Knott County.

It is readily acknowledged that wide discretion is, and usually should be, allotted to the trial court in determining a change of venue question. *Hurley v. Commonwealth,* Ky., 451 S.W.2d 838 (1970). However, the poll is reflective that there was substantial community feeling against the accused and should have militated that a change of venue be granted. The appellant renewed his motion during the course of voir dire as prospective jurors gave repeated voice to the community's sentiment that was widespread against him. The motions were summarily overruled. All potential jurors, save one, had knowledge of the case. Of the 153 or more jurors that were voir dired individually, 112 were excused because they had preconceived opinions about appellant's guilt, could not presume him innocent, or admitted to knowledge of his prior manslaughter conviction. Of 38 jurors who were accepted by the court, 19 had an initial opinion that Jacobs was guilty. Of those 19 jurors, four sat on the panel that decided the case.

■ This appellant, as every defendant no matter how vicious the crime, must receive protections afforded by the Kentucky Constitution, the Kentucky statutes, and the United States Constitution, which interpret basic rights. The judiciary has no alternative but to protect such rights despite the nature of the crime or the influence of an outraged community. *See* concurring/dissenting opinions in *Grooms v. Commonwealth,* Ky., 756 S.W.2d 131, 142 (1988).

■ The bias of a community can make the change of venue constitutionally required. *McCleskey v. Kemp,* 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987). The pattern of deep and bitter prejudice shown to be present throughout the community was clearly reflected in the sum total of the voir dire examination of a majority of the jurors finally placed in the jury box.

■ The right to a jury trial guarantees to the criminally accused a fair trial by a panel of impartial, indifferent jurors. Impartiality is not a technical conception. It is a

state of mind. For the ascertainment of a mental attitude of appropriate indifference, the Constitution lays down no particular tests and procedure is not chained to any ancient and artificial formula. *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). Herein the stockpiling of pretrial prejudice is apparent. The pattern of thought indicated by the news media is revealing.

■ It is not requiring too much that the appellant be tried in an atmosphere undisturbed by so huge a wave of public passion and by a jury other than one in which all of the panel had been exposed to the waves of publicity. A significant test of the type of civilization that Kentuckians are prone to display flows from its treatment of those charged with crimes that arouse the passions of a community. Always the Commonwealth has the burden of establishing guilt solely upon the evidence produced in court and under circumstances assuring any accused (however worthy or apparently unworthy) all safeguards of a procedure that is fair. These conditions, basic as they are, for determining guilt are found wanting if a jury which is to sit in judgment of a person comes to perform its task with minds ineradicably poisoned. *Irvin v. Dowd, supra,* concurring opinion. Appellee refers to *Foster v. Commonwealth,* Ky., 827 S.W.2d 670 (1992), and *Kordenbrock v. Commonwealth,* Ky. 700 S.W.2d 384 (1985), to the effect that, "It is not the amount of publicity which determines that venue should be changed; it is where the public opinion is so aroused so as to preclude a fair trial." This case stands apart as to the depth and the feelings of the community wherein the case was tried. It is one where a court-appointed investigator feared to tread.

*Brewster v. Commonwealth,* Ky., 568 S.W.2d 232 (1978), while correctly denying a change of venue, most importantly reiterated that prejudice must be shown *unless* it may be clearly implied in a given case from the totality of the circumstances. *Estes v. Texas,* 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965).

It is ominous when from a pool of jurors, 74 per cent were excused for the reasons of having fixed opinions of guilt, being unable to presume innocence, and some inability to set aside publicity. Of the 38 jurors accepted by the court, from which the jury was ultimately selected, every member acknowledged an exposure to the continuing publicity. Five such jurors acknowledged an inability to consider a defense of insanity and 17 of the number acknowledged some opinion as to the appellant's guilt, but were accepted by the court as rehabilitated.

■ We do not require that jurors be totally ignorant of the facts and issues involved. However, the buildup of prejudice is clear and convincing. An examination of the entire voir dire is singularly revealing. The repeated pattern of prejudice is self-evident.

Viewed from the totality of the circumstances and, although given our policy of deferring to the trial judge's discretion in such matters, the majority of this Court believes that the present case is one where prejudice is so pervasive it must be "clearly implied" and is, therefore, distinguished from *Montgomery v. Commonwealth,* Ky., 819 S.W.2d 713 (1991). *Wilson v. Commonwealth,* Ky., 836 S.W.2d 872 (1992), adeptly provides that in order for a change of venue to be granted there must be a showing that: 1) there has been prejudicial news coverage, 2) it occurred prior to trial, and 3) the effect of such news coverage is reasonably likely to prevent a fair trial. Our examination of the record in the instant case determines there to be a significant variance with the facts of *Wilson.* Even the appellant's investigator was immobilized by fear and the appellant's attorneys worked under an atmosphere of apprehension.

■ The venue question has been and will continue to be before this and other courts, and none has defined with precision a definite or settled course to be pursued by the court trying it. The general statement that a trial court is vested with sound discretion when determining the question on the evidence and circumstances of each case remains valid unless such discretion has been abused to the probable detriment of the accused. *Whitler v. Commonwealth,* Ky., 810 S.W.2d 505 (1991). We find the record es-

tablishes that there was difficulty in obtaining an impartial jury and, in fact, jurors who were not struck for cause thought the appellant was guilty and several on occasion had admitted an opinion and in one instance "judgment." Later rehabilitation statements on impartiality should be given little weight. We can but conclude that under the totality of the circumstances after reviewing both the pretrial publicity, public opinion polls, and the voir dire examination of the jury, that the appellant was denied his constitutional right to a fair trial.

The parties cite *Mu'Min v. Virginia*, 500 U.S. 415, 111 S.Ct. 1899, 114 L.E.2d 493 (1991), which is distinguishable in that the issue therein related to individual voir dire of prospective jurors rather than broad form venue. However, it is germane in that we have again reviewed the voir dire of those that sat on this jury. Their knowledge of the crime is evident, almost alarming. It is, however, the opinions evidenced by some jurors, and even that of the foreperson who was unsuccessfully challenged for cause. The totality of views are reflective of the taint which requires a change of venue.

## II. CONTROL OF DEFENSE

 Jacobs states that he had a right to present his defense on the merits and his right was denied by his counsel's presentation of an insanity defense over his objections. The Sixth Amendment to the United States Constitution includes a statement of the rights necessary to a full defense:

> In all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence (sic).

Thus, this right is claimed to have been violated when counsel presented the defense of insanity over his objection, thereby undermining his defense of innocence. There was an incompatibility of the two defenses. No effort was made by trial counsel to present appellant's defense on the merits, although

Jacobs' protestations of innocence were mentioned, at trial, by some witnesses.

*Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.E.2d 562 (1975), provides not only that a defense shall be made for the accused, but it grants to the accused the right to make his defense, for it is he who suffers the consequences.

The trial judge was initially on notice that Jacobs strenuously objected to a presentation of an insanity defense as Jacobs had communicated this position to the judge by letter. Counsel later argued the inconsistent positions to the court, and it was ruled, with the court addressing the attorneys, "I think it's a decision to be made by you as counsel." The court also stated, "I think we should proceed to jury selection. Your defense is entirely up to you." The court advised that any further questions would be taken up as they arose.

Of the defenses to be presented, trial counsel chose the insanity defense. In the case of *Dean v. Commonwealth*, Ky., 777 S.W.2d 900 (1989), being an opinion published following the Jacobs trial, it was clearly stated that counsel must respect the defendant's authority to make critical decisions concerning his defense. *Code of Professional Responsibility*, EC 7–7, adopted by SCR 3.130. *Dean, supra*, reiterates that defense counsel generally controls strategic and tactical defense, after consultation with the client, but the decision to assert the defense of insanity may seriously compromise the defendant's chosen alternative defense, as well as threaten his liberty and reputational interests and other legal rights. *Dean citing Frendak v. United States*, 408 A.2d 364, 375–78 (D.C.App.1979).

 The Sixth Amendment constitutionalizes the right in an adversary criminal trial to make a defense as we know it. It is not stated in the amendment in so many words the right to make one's own defense personally, but it is implied by the structure of the amendment. It is a foregone conclusion that it is the accused who will suffer the consequences if the defense fails. *See Faretta v. California, supra.*

Jacobs maintained his innocence, argued his right to present a defense on the merits, and protested the imposition of an insanity

defense. Jacobs' counsel and the trial court were most aware of his position on this issue. Defense counsel felt compelled to ignore such position and to present what he considered the better defense, the insanity defense.

■ Jacobs' Sixth Amendment right to present his defense of innocence was undermined by counsel's presentation of an insanity defense. Neither counsel nor the court has the power to contravene a defendant's voluntary and intelligent decision to forego an insanity defense. *Dean v. Commonwealth, supra.*

Were we not reversing this judgment on the venue issue, the facts in the present case which are even more glaring than in *Dean* would require that the judgment be vacated and remanded. The *Dean* counsel complied in part with appellant's wishes by attempting to refute the Commonwealth's proof in his questioning of both prosecution and defense witnesses, and in his closing argument. There was documentation in the *Dean* case concerning the party's below-average intelligence and possible mental disorder.

In *Dean,* this Court held that the conflict between the appellant's choice of a defense and that of defense counsel, was more apparent than real and did not require reversal, but that on retrial certain measures should be taken to guarantee a defendant's right to his defense.

■ Moreover, when, after counsel has fully informed the defendant of the relevant considerations bearing upon the decision to forego an insanity defense and the defendant insists on an "ill-advised" course of action, counsel should bring the conflict to the attention of the trial court by seeking a determination of whether the accused is capable of voluntarily and intelligently waiving the defense. For, even if a defendant is found competent to stand trial, he may not be capable of making an intelligent decision about his defense. *Dean, supra.*

This opinion constitutes no exercise of a newly discovered constitutional right and has but a singular intention to limit procedural confusion and limit this procedure as addressed to this factual dilemma.

■ Upon retrial of this case, should the trial court feel that Jacobs is not mentally sufficient to waive the insanity defense, the court must determine whether Jacobs, notwithstanding competency to stand trial, is capable of voluntarily and intelligently waiving such defense. The inquiry and findings of the trial court shall be on the record, should later review be necessary. If the defendant is determined incapable of waiving the insanity defense, counsel must proceed as the evidence and his professional judgment permit. If the defendant is found capable of waiving the defense, both counsel and the trial court must proceed according to the defendant's wishes. *Dean, supra.*

Therefore, we hold that upon retrial, should there be a conflict between Jacobs and defense counsel concerning asserting the defense of insanity, and should there be a question as to Jacobs' mental capacity, although found competent to stand trial, the trial court shall hold a hearing as to Jacobs' ability to voluntarily and intelligently understand and waive such defense, and such hearing shall be on the record, and upon the finding of the trial court as to Jacobs' ability to waive such defense, defense counsel shall be bound.

Said otherwise, on this particular issue, it is the trial court who shall determine if the defendant is the master of his own defense and pilot of the ship.

### III. IMPROPER CROSS-EXAMINATION

■ An issue of fundamental fairness originated in this case from the prosecutor's cross-examination of a defense witness, Dr. Candice Walker, the KCPC psychiatrist. This qualified expert was cross-examined by the Commonwealth regarding her medical practice and interruptions thereof, i.e.:

Q. 79 In fact you dropped out of the medical profession, didn't you?

A. Yes. I did not return to work in medicine between 1979 and my return to medicine in 1981, in psychiatry.

Q. 80 You did have some sort of occupation, didn't you?

A. I had hobbies and things like that. But I really wasn't working on a regular basis during that time. I was—I don't know if this is really relevant, Judge. I was rethinking my own life and stuff. But I don't think it applies to now.

Q. 82 In fact, weren't you a professional belly dancer?

Mr. Gordon: Objection, your honor.

The court sustained an objection to such a line of questioning, denied the motion for mistrial, but admonished the jury. In spite of courtroom amusement, we fail to determine how asking a qualified expert witness in the field of psychiatry questions concerning belly dancing is relevant to the issues of this case and would have a bearing upon the expert's credibility as to her medical training and ability or the competency of the examination performed upon appellant. The court, had there been any forewarning, would have suppressed this line of inquiry.

The Commonwealth's purpose of instituting this line of questioning and interjecting such trivia undermined the appellant's right to a fair trial. The Commonwealth certainly could have raised the admissibility of such information with the court prior to Dr. Walker's testimony.

Such prosecutorial misconduct does not equate to properly disqualifying but only demeaning the defense expert in the minds of the jury. While reversal is not required on this issue alone, we state that upon retrial the Commonwealth is now fully aware that such a line of questioning has been determined improper. *Stanford v. Commonwealth*, Ky., 734 S.W.2d 781 (1987).

■ This Court further finds that the trial court's admonition to the jury to disregard the question and further, that Dr. Walker had been found to be an expert witness in the field of psychiatry, cured the error. The trial court's admonition kept the jury's mind in proper perspective and mitigated the prejudicial nature of the question.

## IV. *FINDING OF AN AGGRAVATOR*

■ There was no error, as appellant states, when the crime of attempted rape was used as an aggravator for the imposition of the death penalty.

KRS 532.025(2) provides:

In all cases of offenses for which the death penalty may be authorized, the judge shall consider, or he shall include in his instructions to the jury for it to consider, any mitigating circumstances or aggravating circumstances otherwise authorized by law and any of the following statutory aggravating or mitigating circumstances which may be supported by the evidence.

KRS 532.025(3) provides:

The jury, if its verdict be a recommendation of death, ... shall designate in writing, signed by the foreman of the jury, the aggravating circumstance or circumstances which it found beyond a reasonable doubt.

■ *Smith v. Commonwealth*, Ky., 599 S.W.2d 900 (1980), provides that the trial court is not limited by the statutory definition of mitigating circumstances, but all evidence that would tend to excuse or alleviate appellant's responsibility is competent. The purpose of the section aforesaid is to allow evidence of all relevant and pertinent information so that the jury can make an informed decision concerning the appropriate sentence in a particular case. *Templeman v. Commonwealth*, Ky., 785 S.W.2d 259 (1990).

■ The Court in *Stanford v. Commonwealth, supra,* held that KRS 532.025 says that the judge or jury shall consider "any mitigating circumstances or aggravating circumstances otherwise authorized by law" and any of the eight statutory circumstances of mitigation. KRS 532.025 is more expansive in that it spells out eight circumstances of mitigation that are relevant, and it contains a catchall provision, "any mitigating circumstances otherwise authorized by law." This provision would permit the trial court to submit redeeming evidence to the jury. However, we believe the evidence must contain facts or a qualified opinion bearing on the defendant's character, prior record or circumstances of the offense, or relative to one of the specified statutory mitigating circumstances. *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), sets the constitutional parameters for dealing with

the reception into evidence before a trier of fact of mitigating circumstances. *Lockett, supra,* requires that the sentencing body consider any relevant evidence offered by the defense in mitigation of capital punishment.

In *Harris v. Commonwealth,* Ky., 793 S.W.2d 802 (1990), the question was whether appellant's aggravated sentence of life imprisonment without possibility of parole for 25 years for kidnapping was error in that the jury did not find one of the aggravating circumstances enumerated in KRS 532.-025(2). The court there held that the record showed that the aggravating circumstance which the jury found beyond reasonable doubt and designated in writing was that "in the course of the commission of the kidnapping, Harris murdered the victim." Further, the court found that although such aggravator is not among the seven listed in KRS 532.025(2), the introductory language of that very subsection, which expressly authorizes the judge and jury to consider "any aggravating circumstances otherwise authorized by law" is provided by the penalty section of the kidnapping statute, KRS 509.040(2), which makes kidnapping a capital offense when the victim is not released alive.

■ KRS 532.025(3) states that:

In all cases unless at least one of the statutory aggravating circumstances enumerated in subsection 2 of the section is so found, the death penalty or the sentence to imprisonment for life without benefit of probation or parole until the defendant has served a minimum of 25 years of his sentence, shall not be imposed.

We hold such subsection to be inartfully drafted. "The literal language of the last sentence in subsection 3 is in apparent conflict with the statute's general purpose, as gathered from all parts of the statute. The literal language must surrender." *Harris, supra.* Therefore, the jury's consideration of aggravating circumstances was not limited to one exactingly and specifically enumerated in this statute. Notice of the aggravating circumstances was not in issue.

■ The fact that the Commonwealth does not prosecute a murder offense by alleging or offering to prove any of the aggra-

vating circumstances that would authorize imposition of aggravated punishment does not transform the offense of capital murder into a Class A felony. *Berry v. Commonwealth,* Ky., 782 S.W.2d 625 (1990). Therein, the Court pointed out that murder is to be prosecuted as a capital offense pursuant to statute. KRS 532.010(1) provides that capital offenses are specific type felonies and have a specific sentencing statute, KRS 532.-030(1). That statute provides that when a person is convicted of a capital offense, punishment may be fixed at death, imprisonment for life without the benefit of probation or parole for 25 years, life imprisonment or imprisonment for not less than 20 years.

The jury's penalty verdict in this case states:

We the jury as to the murder of Judy Ann Howard find the following aggravating circumstance listed in Instruction No. 3 to be proved beyond a reasonable doubt: that at the time he killed Judy Ann Howard, the defendant, Clawvern Jacobs, was engaging in the commission of rape in the first degree.

Therefore, the jury made the finding required by KRS 532.025(2)(a). Although the jury found appellant only guilty of attempted rape during the guilt phase, and first-degree rape as an aggravator in the penalty phase, this does not infer that the jury acquitted appellant of first-degree rape during the guilt phase, as the instructions did not require them to make such a determination at that time.

## V. *JURY SENTENCING RESPONSIBILITY*

■ The use of the term "recommendation" by trial courts continues as a problem in cases involving death sentence responsibilities. Herein, Jacobs maintains that the trial court characterized the jury's verdict as a recommendation, but this record discloses a change and a correction wherein the term "fix the defendant's punishment" was utilized in lieu of the impermissible term.

The United States Supreme Court held in *Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), "It is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the

responsibility for determining the appropriateness of the defendant's death rests elsewhere." (472 U.S. at 105 S.Ct. at 2639). This Court announced a similar conclusion in *Tamme v. Commonwealth*, Ky., 759 S.W.2d 51 (1988), by prospectively banning the use of the word "recommend" with reference to a jury's sentencing responsibilities in voir dire, instructions, or closing argument.

■ There is no valid issue arising in this case as we determine that the trial court's admonition and the correction of the instructions were curative. The facts in this case do not substantiate the claim that the jury felt a diminution of their duty in fixing the appellant's sentence. The facts present here are clearly distinguishable from those in *Ward v. Commonwealth*, Ky., 695 S.W.2d 404 (1985). *Ward, supra*, holds that it is grievous error to minimize the responsibility of the jury in assessing the death penalty. Certainly it can be no clearer that the use of the term "recommendation" utilized in sentencing responsibilities in a death penalty case is to be condemned to oblivion.

The judgment of Knott Circuit Court is reversed and the case is remanded for retrial, with the direction that appellant's motion for a change of venue be granted, and further subject to the directions of this opinion.

STEPHENS, C.J., LAMBERT and LEIBSON, JJ., and D.J. Combs, Special Justice, concur.

WINTERSHEIMER, J., dissents by separate opinion in which SPAIN, J., joins.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent from the majority opinion because I do not believe Jacobs was entitled to a change of venue and it was not error to permit defense counsel to present an insanity defense.

The conviction of Jacobs should not be reversed because he was not absolutely entitled to a change of venue. Jacobs was not denied a fair and impartial jury in this case. It is not the amount of publicity which determines that venue should be changed. It is whether public opinion is so aroused as to prevent a fair trial. *Foster v. Commonwealth*, Ky., 827 S.W.2d 670 (1992). In this case the trial judge permitted attorneys for the parties great discretion in questioning those persons summoned for jury duty in order to ascertain whether they had any preconceived opinions that would interfere with their impartiality as jurors. Mere knowledge of the case is not sufficient to excuse jurors or to change venue. The critical test is whether the jury had formed an opinion regarding guilt or innocence or that the information affected a juror's ability to render a verdict based on the evidence presented at trial. In this case, the change of venue is supported by two affidavits, one signed by trial counsel for the defendant, and the other by a secretary employed by a different defense attorney. In reviewing the testimony of potential jurors and balancing it against the request for change of venue, I do not find reversible error.

In addition, I do not believe it was reversible error to allow trial counsel to present an insanity defense. A review of the record does not make it abundantly clear that Jacobs had personal objections to the insanity defense. It should be noted that the trial in this case began on July 5, 1989 and preceded this Court's decision in *Dean v. Commonwealth*, Ky., 777 S.W.2d 900, which was rendered September 28, 1989.

I would affirm the conviction.

SPAIN, J., joins this dissent.