Tina M. QUARELS, Appellant,

v.

COMMONWEALTH OF KENTUCKY, Appellee.

No. 2002–SC–0289–MR.

Supreme Court of Kentucky.

Aug. 26, 2004.

---

Donna L. Boyce, Assistant Public Advocate, Frankfort, Counsel for Appellant.

Gregory D. Stumbo, Attorney General, Wm. Robert Long, Jr., Assistant Attorney General, Frankfort, Counsel for Appellee.

Opinion of the Court by Justice STUMBO.

Appellant was sentenced to life imprisonment without the possibility of parole after being convicted of aggravated murder, first-degree arson, and two counts of criminal attempt to commit murder. On November 29, 1998, Appellant gathered her three children, ages 2, 5, and 6 years old, put them in the bed with her, doused the room in lighter fluid and set the bed on fire. All escaped except 2–year–old Ju'monie, who died of smoke inhalation. Appellant alleges numerous issues on appeal, but because this Court believes Appellant was erroneously denied the right to testify on her own behalf, we reverse Appellant's conviction and remand for a new trial. Accordingly, we will only address those issues likely to recur on retrial.

## DENIAL OF RIGHT TO TESTIFY

Prior to trial, Appellant made repeated emotional outbursts and became hysterical and disruptive. After defense counsel advised the court that attorney/client communications had completely broken down, the court found that Appellant was unable to continue in her present state and ordered a competency evaluation at Kentucky Correctional Psychiatric Center (KCPC). The result was a mistrial, and Appellant's second trial did not begin until nearly a year later. KCPC eventually reported to the court that Appellant was competent to stand trial.

When the second trial began, all parties agreed that Appellant's competency was no longer an issue. Appellant continued to have outbursts throughout the trial and was forcibly removed from the courtroom on at least one occasion. Appellant stated numerous times before the court (and at least one time in front of the jury), her desire to testify on her own behalf. At the close of the defense's case, defense counsel informed the court that Appellant still wished to testify, against counsel's advice, and requested an ex parte hearing to resolve the matter. Defense counsel made a motion for the trial court to make a determination that Appellant did not appreciate the consequences of taking the stand, and asked that the court prevent her from doing so. Defense counsel advised the court that in a situation such as this, *Jacobs v. Commonwealth*, Ky., 870 S.W.2d 412 (1994), holds that the trial court is to make a determination whether Appellant is capable of intelligently directing her own defense by making the decision to testify on her own behalf. The trial court questioned Appellant extensively and strenuously suggested to Appellant that she

change her mind. Appellant continually reasserted her desire to testify, stating that she would not be able to live with herself unless she told the truth. However, the trial court ultimately found that it would be extremely detrimental to Appellant's defense if she were to testify in front of the jury based on her prior outbursts and inability to control her emotions. After hearing the court's ruling, Appellant stated that she wished to fire her attorneys and represent herself so that she could take the stand. Appellant asked the court how it could deny her her constitutional rights.

In *Jacobs*, this Court held that if a trial court has questions about whether a defendant is "mentally sufficient" to waive the *insanity defense*—even though he or she has been found competent to stand trial—the trial court must determine if the defendant is capable of voluntarily and intelligently waiving the defense. *Id.* at 418. If the defendant is found incapable of waiving such defense, defense counsel is entitled to proceed with the defense, despite the defendant's protests, if his or her professional judgment and the evidence permit. *Id.* The Commonwealth urges us to apply the reasoning of *Jacobs*, first articulated in *Dean v. Commonwealth*, Ky., 777 S.W.2d 900 (1989) (overruled on other grounds, *Caudill v. Commonwealth*, Ky., 120 S.W.3d 635 (2003)), to the present situation where a defendant asserts the right to testify on his or her own behalf. We decline to do so, and find that the holding of *Jacobs* and *Dean* should be limited to a defendant's decision to assert or forego a particular defense.

Our case law is replete with references to a defendant's right to testify at trial being a personal and constitutional right only to be knowingly and intelligently waived. *See Watkins v. Commonwealth*, Ky., 105 S.W.3d 449, 453 (2003); *Crawley v. Commonwealth*, Ky., 107 S.W.3d 197, 199 (2003). In *Crawley*, we adopted the Third Circuit's reasoning in *United States v. Pennycooke*, 65 F.3d 9 (3rd Cir.1995), that a trial court has a duty to inquire into a disagreement between a defendant and defense counsel regarding the defendant's right to testify if it has reason to believe that a defendant's rights have been wrongly suppressed. *Id.* In *Crawley*, we held that the trial court's failure to conduct such an inquiry was reversible error. *Id.* We did not reach the issue of what role, if any, the trial court should play in determining if testifying on one's own behalf would be detrimental to the defense, nor did we discuss the consequences of the trial court's absolute refusal to allow the defendant to take the stand after having found that the defendant was not competent to direct her own defense.

A number of federal jurisdictions have held that a defendant's right to testify at trial generally cannot be waived by defense counsel as a matter of trial strategy against a defendant's wishes. *See United States v. Joelson*, 7 F.3d 174 (9th Cir.1993) (upholding conviction after trial court encouraged defendant to follow attorney's advice by not testifying and defendant presumably assented by not objecting further); *United States v. Curtis*, 742 F.2d 1070 (7th Cir.1984) (nonetheless upholding conviction where counsel refused to put defendant on stand because it was clear that defendant would have perjured himself).

Likewise, the Sixth Circuit has held that the decision of whether or not to testify ultimately lies with the defendant. *United States v. Webber*, 208 F.3d 545, 550–551 (6th Cir.2000).

The right to testify is personal to the defendant, may be relinquished only by the defendant, and the defendant's relinquishment of the right must be knowing

and intentional. The defense counsel's role is to advise the defendant whether or not the defendant should take the stand, but it is for the defendant, ultimately, to decide.

*Id.* (Citations omitted). "A defendant who wants to testify can reject defense counsel's advice to the contrary by insisting on testifying, communicating with the trial court, or discharging counsel." *Id.* at 551.

We agree with the reasoning of the Sixth Circuit that the decision to testify in one's own defense is of such importance that the ultimate decision must be left to the defendant himself. "And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of 'that respect for the individual which is the lifeblood of the law.'" *Faretta v. California*, 422 U.S. 806, 834, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975) (quoting *Illinois v. Allen*, 397 U.S. 337, 350–351, 90 S.Ct. 1057, 1064, 25 L.Ed.2d 353 (1970) (Brennan, J., concurring)).

A defendant's right to testify on his or her own behalf is grounded in the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. *Rock v. Arkansas*, 483 U.S. 44, 51–52, 107 S.Ct. 2704, 2708–2709, 97 L.Ed.2d 37 (1987); *Webber,* 208 F.3d at 550. Likewise, our state constitution provides that "[i]n all criminal prosecutions the accused has the right to be heard by himself and counsel." Ky. Const. § 11. The Kentucky General Assembly has enacted KRS 421.225, which states that "[i]n any criminal or penal prosecution the defendant, on his own request, shall be allowed to testify in his own behalf, but his failure to do so shall not be commented upon or create any presumption against him."

In *Ortega v. O'Leary*, 843 F.2d 258, 261 (7th Cir.1988), the Seventh Circuit Court of Appeals held that it was error for the trial court to deny a defendant the right to testify "no matter how unwise such a decision" may have ultimately proven to be. The court noted that the trial court's unwillingness to allow the defendant to testify might have stemmed from the fact that Ortega's conduct had been disruptive throughout the trial. *Id.* at 261. While acknowledging sympathy for the court in such a situation, the court stated, "[n]onetheless, courts should carefully consider a defendant's request to exercise his or her constitutional rights, particularly the right to testify." *Id.* "A contentious defendant has no fewer rights than a sympathetic one." *Id.*

We believe that the trial court's refusal to allow Appellant to testify was error, even though it is clear from the record in this case that the trial court was merely trying to protect Appellant from herself. Appellant repeatedly stated that she wanted the prosecutors to just kill her. Defense counsel advised the court that Appellant was acting out in an attempt to use the death penalty to commit suicide, and also that any testimony given might have had an effect on Appellant's insanity defense. The trial court found that Appellant's desire to testify stemmed from a cathartic need to explain why she did what she did, rather than a desire to aid in her own defense. The trial court ultimately found that it would be in Appellant's best interest if she were kept off of the stand.

We believe that it was the trial court's duty to allow Appellant to testify regardless of the collective belief of all involved that such a decision was being unintelligently exercised. For "[e]ven more fundamental to a personal defense than the right of self-representation . . . is an accused's right to present his own version of events in his own words. A defen-

dant's opportunity to conduct his own defense by calling witnesses is incomplete if he may not present himself as a witness." *Rock*, 483 U.S. 44 at 52, 107 S.Ct. 2704 at 2709, 97 L.Ed.2d 37.

■ It is for these reasons that we choose not to apply the reasoning of *Jacobs* and *Dean* to the right to testify on one's own behalf. *Jacobs* and *Dean* advocate trial court intervention when defense counsel and the accused disagree on the assertion of a defense. While acknowledging the accused's right to make critical decisions regarding his own defense, both courts ultimately leave the decision of whether or not to assert a defense with the trial court. *Jacobs*, 870 S.W.2d at 418; *Dean*, 777 S.W.2d at 908. As a general matter though, it is advisable that a trial court should refrain from dispensing advice regarding a defendant's decision to testify at trial, as "that intrusion may have the unintended effect of swaying the defendant one way or the other." [1] *Pennycooke*, 65 F.3d at 11; *see also Joelson*, 7 F.3d at 178. The distinct difference between the nature of the right to assert a particular defense and the right to testify at trial mandate that we treat each differently.

■ We do not mean to say that the defendant's right to testify is without limit. "The right 'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.'" *Rock*, 483 U.S. at 55, 107 S.Ct. 2704 (quoting *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973)). *See also United States v. Diomande*, 40 Fed. Appx. 120, 123 (6th Cir.2002). *See, e.g., Nix v. Whiteside*, 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986) (holding that an accused has no right to present

perjured testimony at trial). A defendant's testimony is also legitimately subject to applicable state procedural and evidentiary rules. *Rock*, 483 U.S. at 56, n. 11, 107 S.Ct. 2704.

■ Although we find that the trial court erred in preventing Appellant from testifying, automatic reversal of Appellant's conviction is not mandated if this Court finds that such an error is subject to the harmless error analysis espoused in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (overruled in part by *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)). The Seventh Circuit held in *Ortega* that although it is error for a trial court to prohibit a defendant from testifying on his or her own behalf, such error is not reversible if found to be harmless beyond a reasonable doubt. 843 F.2d at 261. The court in *Ortega* held that the constitutional effect of the error should be analyzed in light of the harmless error standard set forth in *Chapman*.

■ "The fact that an error involves a constitutional right does not preclude harmless error analysis." *Talbott v. Commonwealth*, Ky., 968 S.W.2d 76, 83–84 (1998). The United States Supreme Court has applied a harmless error analysis to a wide variety of constitutional errors. *See, e.g., Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (erroneous admission of involuntary confession); *Clemons v. Mississippi*, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990) (unconstitutionally overbroad sentencing-phase jury instructions in capital trial); *Satterwhite v. Texas*, 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988) (erroneous admission of evidence at sentencing

---

1. This is not to say that a trial court should not inquire into an apparent disagreement between defense counsel and a defendant

over the decision to testify, as held in *Crawley v. Commonwealth*, Ky, 107 S.W.3d 197 (2003).

phase of capital trial in violation of right to counsel); *Crane v. Kentucky,* 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986) (erroneous exclusion of defendant's testimony surrounding the circumstances of his confession); *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (erroneous restriction of biased witness cross-examination in violation of Sixth Amendment); *Kentucky v. Whorton,* 441 U.S. 786, 99 S.Ct. 2088, 60 L.Ed.2d 640 (1979) (failure to instruct jury on the presumption of innocence).

■ This Court has not previously addressed whether the harmless error standard should be applied when a trial court impermissibly denies a defendant the right to testify on her own behalf. A great weight of authority has held this type of error to be a "trial error," which may be "quantitatively assessed in the context of other evidence presented," *Fulminante,* 499 U.S. at 307–308, 111 S.Ct. at 1264, and thus susceptible to a harmless error analysis.[2] *See, e.g., Martinez v. Ylst,* 951 F.2d 1153 (9th Cir.1991); *Ortega v. O'Leary,* 843 F.2d 258 (7th Cir.1988); *Wright v. Estelle,* 549 F.2d 971 (5th Cir.1977); *People v. Johnson,* 62 Cal.App.4th 608, 72 Cal.Rptr.2d 805 (1998); *State v. Silva,* 78 Hawai'i 115, 890 P.2d 702 (App.1995) (overruled on other grounds, *Tachibana v. State,* 79 Hawai'i 226, 900 P.2d 1293 (1995)); *People v. Solomon,* 220 Mich.App. 527, 560 N.W.2d 651 (1996); *Momon v. State,* 18 S.W.3d 152 (Tenn.1999). In contrast, a "structural error" affects the entire framework of the trial and therefore defies harmless error analysis. *Fulminante,* 499 U.S. at 309, 111 S.Ct. at 1265. Examples of such structural errors include: a denial of the right to self-representation, *McKaskle v. Wiggins,* 465 U.S.

168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984); the deprivation of the right to counsel, *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); and the denial of the right to an impartial trial judge, *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927).

The Sixth Circuit has found a trial court's denial of a defendant's right to testify harmless error in certain instances. In *Diomande,* the court upheld the United States District Court's ruling that refused to allow certain portions of a defendant's testimony—offered to negate intent—by stating " '[f]or denial of a defendant's proffered testimony to constitute reversible error, the testimony must establish a reasonable doubt about guilt in light of the record in the case." ' 40 Fed. Appx. at 123 (quoting *United States v. Reifsteck,* 841 F.2d 701, 705 (6th Cir.1988)). *See also Solomon v. Curtis,* 21 Fed. Appx. 360 (6th Cir.2001) (holding that the district court erred in overturning the Michigan Court of Appeals' ruling that denial of the defendant's right to testify was harmless rather than structural error); *Skeens v. Haskins,* 4 Fed. Appx. 236 (6th Cir.2001) (upholding Ohio state court's application of the harmless error doctrine to the denial of a defendant's right to testify).

Kentucky case law has applied a harmless error analysis to the erroneous admission of a confession in violation of *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), *Talbott v. Commonwealth,* Ky., 968 S.W.2d 76 (1998), a trial court's failure to give an instruction to the jury that no adverse inference should be drawn simply from the fact that a defendant did not testify at trial, *Commonwealth v. McIntosh,* 646 S.W.2d 43 (1983), and also when the trial court allowed the

---

**2.** Federal circuit courts are required to apply the harmless error standard espoused in *Brecht v. Abrahamson,* 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), to federal habeas cases, rather than the Chapman standard applicable on direct appeal. *Id.*

Commonwealth to comment on the defendant's constitutional privilege against self-incrimination, *Blake v. Commonwealth,* Ky., 646 S.W.2d 718 (1983).

■ We agree with the great weight of authority cited above that denial of a defendant's right to testify on his or her own behalf is a constitutional "trial-type" error that is amenable to the harmless error analysis espoused in *Chapman.* However, in the instant case, we cannot say that the failure to allow Appellant to testify was harmless error beyond a reasonable doubt. Appellant was indicted for capital murder, first-degree arson, and two counts of criminal attempt to commit murder. Appellant requested and received jury instructions on insanity and guilty but mentally ill, but was ultimately convicted of each offense and sentenced to life without parole. We cannot say that Appellant's testimony would not have had any bearing on the jury's decision to decline to find her insane or guilty but mentally ill. In such a situation, we must be able to declare a belief that the failure of Appellant to address the jury with her own words did not contribute to her convictions—and this we are unable to do. *Chapman,* 386 U.S. at 26, 87 S.Ct. at 829. We deem the error in this case to be particularly egregious because Appellant was absolutely and completely denied *any* opportunity to speak to the jury (including at the sentencing phase), even after she had adamantly requested permission to do so at least once in the jury's presence. Instead of hearing Appellant describe in her own words what she had done, the jury was permitted to see her being effectively "gagged" by the trial court and drug forcibly from the courtroom. To hold the error in this instance to be harmless would not promote the policy interest the harmless error doctrine purports to serve, which is "public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error." *Fulminante,* 499 U.S. at 308, 111 S.Ct. 1246 at 1264, 113 L.Ed.2d 302 (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986)). Accordingly, the trial court's failure to allow Appellant to take the stand denied Appellant her federal and state constitutional right to testify on her own behalf and we do not find such error to have been harmless beyond a reasonable doubt. In light of the fact that this case is being remanded for a new trial, we will only briefly address the remainder of Appellant's arguments on appeal that will likely occur on retrial.

## RIGHT TO SPEAK AT FINAL SENTENCING HEARING

■ Appellant claims she was also denied the right to speak at her sentencing hearing. The Commonwealth contends that Appellant was given the opportunity to speak, but chose not to address the court until after her sentence had already been imposed and the hearing adjourned. RCr 11.02(1) states that "[t]he court shall ... afford the defendant and the defendant's counsel an opportunity to make a statement or statements in the defendant's behalf and to present any information in mitigation of punishment." Without determining whether the failure to allow Appellant to speak at the sentencing hearing would by itself be reversible error, we merely caution the court on retrial to allow Appellant to speak at the sentencing hearing (if any) if she so requests in a timely manner. *See Green v. United States,* 365 U.S. 301, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961) (holding that failure to afford a defendant the opportunity to speak to the sentencing court was a violation of Federal Rule of Criminal Procedure 32(a), and constituted a denial of due process, yet stating that such an error could be harmless).

However, the right to speak at the sentencing hearing, just like the right to testify at trial, is not without limit. The court may in its discretion, limit the testimony in duration and content. *Id.*

## FAILURE TO HOLD COMPETENCY HEARING

The trial court declared a mistrial a few days into Appellant's first trial after several hysterical outbursts that prompted defense counsel to report to the court that attorney-client communications had completely broken down. The trial court ordered that Appellant be confined at KCPC for treatment until her second trial began. The court later received a certification from Appellant's counsel that there were no reasonable grounds to doubt Appellant's current competence to stand trial based on an evaluation by a KCPC psychologist. The trial court entered an order discharging Appellant from KCPC (per its request) and returning Appellant to jail to await trial. Defense counsel agreed in open court before trial that Appellant's competency was no longer an issue. Appellant's outbursts started again midway through trial.

Appellant argues that reversible error occurred because the trial court failed to hold a formal competency hearing pursuant to KRS 504.100. KRS 504.100(1) states that if the court "has reasonable grounds to believe the defendant is incompetent to stand trial, the court shall appoint at least one (1) psychologist or psychiatrist to examine, treat and report on the defendant's mental condition." KRS 504.100(3) further mandates that after a competency evaluation has been performed and a report is filed, "the court shall hold a hearing to determine whether or not the defendant is competent to stand trial." This Court has previously held that this hearing is mandatory and cannot be waived by the defendant. *Thompson v. Commonwealth*, Ky., 56 S.W.3d 406 (2001); *Mills v. Commonwealth*, Ky., 996 S.W.2d 473 (1999).

We do not find it necessary to specifically determine whether or not an actual "hearing" was held in this case, as we are reversing Appellant's conviction on other grounds. Although upon remand, the trial court is well advised to hold a formal evidentiary hearing on Appellant's competency by going on the record and making specific findings of fact in support of its conclusion in its subsequent order if the court "has reasonable grounds to believe the defendant is incompetent to stand trial." KRS 504.100(1). *See Thompson,* 56 S.W.3d at 410. The trial court should also enter into the record all professional evaluations as to Appellant's competency.[3] Appellant shall not be retried until the trial court finds her competent to stand trial.

Appellant also argues on appeal that the trial court should have reevaluated her competency midway through trial due to her deteriorating mental state, which was clearly reflected by the reemergence of her disruptive behavior. RCr 8.06 states:

> If upon arraignment or during the proceedings there are reasonable grounds to believe that the defendant lacks the

---

**3.** We might note that in all cases a full-blown evidentiary hearing with witness testimony, etc., may not always be necessary. In certain instances, judicial economy will dictate that an "abbreviated" hearing should follow. For example, counsel may agree to stipulate to certain evidence, such as a mental health expert's finding of competency, and the trial court could then make a finding of competency based upon those stipulations. We reiterate though, that even if defense counsel insists that competency is not an issue, if the trial court nonetheless has reasonable grounds to believe the defendant is incompetent, it is incumbent that the court hold a formal hearing on the issue.

capacity to appreciate the nature and consequences of the proceedings against him or her, or to participate rationally in his or her defense, all proceedings shall be postponed until the issue of incapacity is determined as provided by KRS 504.100.

When asked for a competency reevaluation by defense counsel, the trial court stated that based on her observations of Appellant, and on the finding of competency by KCPC, she believed Appellant to be purposefully disrupting the trial and found that Appellant was capable of participating rationally in her own defense. Again, without necessarily determining whether the trial court committed error, we merely note that a trial court has broad discretion in this instance and error will not be found unless a reviewing court finds an abuse of that discretion. *Harston v. Commonwealth*, Ky., 638 S.W.2d 700, 701 (1982).

Indeed, a trial court is required by RCr 8.06 to postpone the proceedings if there are reasonable grounds to believe the defendant is no longer capable of participating rationally in her own defense. However, "[t]his rule does not place upon the trial court a duty to hold hearing after hearing in the absence of some appearance of change in the defendant's condition since the ruling on competency." *Id.*

## SUFFICIENCY OF INDICTMENT

Appellant for the first time on appeal alleges that the indictment in her case "failed to charge the existence of any aggravating factor that would enhance the penalty range for murder to include the aggravated sentence of life without parole." Appellant did not argue before the trial court that she lacked the requisite notice of the Commonwealth's intent to seek an aggravated sentence and cannot be heard to complain now. *Furnish v.*

*Commonwealth*, Ky., 95 S.W.3d 34, 41 (2002). Nonetheless, we find no merit to Appellant's claim. This Court has recognized many times that there is no authority requiring that aggravators must be described in the indictment. *Wheeler v. Commonwealth*, Ky., 121 S.W.3d 173, 185 (2003). *See also Garland v. Commonwealth*, Ky., 127 S.W.3d 529, 546 (2003). Likewise, Appellant's argument that *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), mandates that aggravating circumstances must be charged in the indictment was discussed by this Court in *Wheeler*. There we stated "[t]he citation by Wheeler to *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), which relates to federal prosecutions, is not contradictory to our RCr 6.10. *Jones, supra*, holds that the indictment should furnish the accused with a description of the charge which will enable him to make his defense." *Wheeler*, 121 S.W.3d at 185. *Jones* merely held that a provision of a federal carjacking statute that resulted in harsher penalties when serious bodily injury or death occurred constituted an additional element of the offense, not merely aggravating circumstances, and thus should have been described in the indictment. This is not contrary to our reasoning here.

Appellant's indictment dated December 3, 1998, stated that she was being charged with murder, a capital offense, punishable by 20 years to 50 years; or life; or life without parole; or life without parole for 25 years; or death. The indictment also charged Appellant with arson in the first degree and criminal attempt to commit murder. On February 17, 1999, the Commonwealth filed a Notice of Aggravating Circumstances, which supplied formal notice that the Commonwealth intended to prosecute the indict-

ment as a capital offense (murder while engaged in the commission of arson) pursuant to KRS 532.025. KRS 532.025(1) only requires that the Commonwealth give written notice of any aggravators prior to trial. *Wheeler,* 121 S.W.3d at 185. The indictment here complied with KRS 532.025 and RCr 6.10. An indictment is sufficient if it informs the accused of the specific offense with which he or she has been charged and if it is not misleading. *Id. See also Wylie v. Commonwealth,* Ky., 556 S.W.2d 1 (1977). Here, Appellant had—and will have for retrial—sufficient notice of with what she is being charged.

## TAPED PHONE CONVERSATIONS

■ Appellant argues that the trial court erred in allowing the Commonwealth to introduce four taped phone calls from jail between Appellant and her daughter, Khoree. Appellant argues that she was unfairly prejudiced by the last-minute production of the tapes, as the defense did not have enough time to adequately review all phone calls in their entirety. Appellant's argument on this point is now moot, as she will have sufficient time to review the tapes for retrial if necessary. Appellant further contends that the admission of only certain portions of the tapes referring to Ju'monie in a derogatory manner were taken out of context and only further served to prejudice her before the jury. Likewise, the defense will now have an opportunity to review the tapes in their entirety and make motions pertaining to any relevant portions it wishes to have admitted into or excluded from evidence.

## AUTOPSY PHOTOGRAPH

■ Appellant alleges that an autopsy photograph of Ju'monie with his scalp peeled back, offered to show bruising on the inside of his scalp, was highly inflammatory and prejudicial and should have been excluded. The Commonwealth argues that the photo was relevant to Appellant's state of mind at the time of the crime by suggesting that she hit Ju'monie on the head prior to starting the fire, thus tending to prove Appellant's intent was to kill the child. The general rule is that an otherwise admissible photograph should not be excluded from evidence merely because it is gruesome. *Holland v. Commonwealth,* Ky., 703 S.W.2d 876, 879 (1985). Further, the decision of whether to admit evidence as more probative than prejudicial is reviewed only for an abuse of discretion. *Commonwealth v. English,* Ky., 993 S.W.2d 941, 945 (1999). We cannot say that the trial court abused its discretion in this instance.

## EVIDENCE OF HEAD–BANGING

■ Appellant argues that she was prevented from establishing a complete defense when the trial court refused to allow the introduction of previous medical records tending to show that Ju'monie had a history of banging his head. Appellant sought to admit this evidence in rebuttal of the autopsy photo and corresponding medical testimony, and the testimony of Appellant's daughter that she had seen Appellant hit Ju'monie on the head four times prior to setting the fire. The trial court excluded the evidence as irrelevant. We believe the exclusion of this evidence limited Appellant's ability to counter the implication that she attempted to knock Ju'monie unconscious before the fire. Such rebuttal evidence is proper since it was offered in an attempt to explain a fact the adverse party had attempted to prove. *See Keene v. Commonwealth,* Ky., 307 Ky. 308, 210 S.W.2d 926, 928 (1948) (overruled in part, *Colbert v. Commonwealth,* Ky., 306 S.W.2d 825 (1957)). Although the trial court has broad discretion in making decisions on such evidentiary issues, its decision in this respect was an abuse of

discretion. *English*, 993 S.W.2d at 945. Accordingly, the trial court should admit Appellant's rebuttal evidence if the issue occurs on retrial.

## LESSER–INCLUDED OFFENSES

 Appellant also contends that the trial court erroneously refused to instruct the jury on the lesser-included offenses of second-degree manslaughter, second-degree wanton endangerment, and third-degree arson. Appellant argues that there was evidence that her intent with respect to killing her children had changed after setting the fire, and therefore, she deserved instructions on second-degree manslaughter and second-degree wanton endangerment. Likewise, Appellant argues that she was entitled to a third-degree arson instruction because there was no proof that she intended to cause damage to a building.

 It is true that "[a] trial court is required to instruct on every theory of the case reasonably deducible from the evidence." *Manning v. Commonwealth*, Ky., 23 S.W.3d 610, 614 (2000). However, "that duty does not require an instruction on a theory with no evidentiary foundation . . . ." *Neal v. Commonwealth*, Ky., 95 S.W.3d 843, 850 (2003). At trial, it was uncontroverted that Appellant intentionally set her house on fire by pouring lighter fluid on and around the bed, for the sole purpose of killing herself and her children. The evidence showed that Appellant's older children escaped without Appellant's help and even guided Appellant herself to the back door before she collapsed. Even if Appellant did later change her mind about killing her children, "a person is presumed to intend the logical and probable consequences of [her] conduct, and a person's state of mind may be inferred from actions preceding and following the charged offense." *Lawson v. Common-*

*wealth*, Ky., 85 S.W.3d 571, 579 (2002) (quoting *Stopher v. Commonwealth*, Ky., 57 S.W.3d 787, 802 (2001)). The same can be said of Appellant's claim that she did not intend to burn her home—only to kill herself and her children—thus warranting an instruction of third-degree arson. "An instruction on a lesser included offense is required only if, considering the totality of the evidence, the jury might have a reasonable doubt as to the defendant's guilt of the greater offense, and yet believe beyond a reasonable doubt that he is guilty of the lesser offense." *Neal*, 95 S.W.3d at 850. Here, we do not believe that a jury could have had reasonable doubt that Appellant intended to kill her children by starting a fire in her home, yet did not intend to cause damage to the structure itself. Therefore, if upon retrial, the evidence were the same as here, Appellant would not be entitled to instructions on second-degree manslaughter, second-degree wanton endangerment, and third-degree arson.

## DOUBLE JEOPARDY

Appellant's argument that her conviction of first-degree arson precludes the use of an arson aggravator with the murder charge is without merit. This Court has already addressed this very argument in *Wilson v. Commonwealth*, Ky., 836 S.W.2d 872, 891 (1992) (overruled on other grounds, *St. Clair v. Roark*, Ky., 10 S.W.3d 482 (1999)), where we held:

> K.R.S. 532.025 does not require that the defendant be punished for the same offense twice. The statute only requires that the aggravating circumstances be used only to determine whether the crime of murder should receive the death penalty. If the aggravating circumstance cannot be proved, then the penalty of death cannot be imposed. K.R.S. 532.030(2).

Simply because the aggravating circumstance duplicates one of the underlying offenses does not mean that the defendant is being punished twice for the same offense. The underlying offenses were only factors to be considered as to whether the punishment for murder should be death. Wilson was not subjected to double jeopardy or multiple punishments for the same offense.

Appellant's assertion that arson is an included offense of murder pursuant to *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), must also fail. *See Eldred v. Commonwealth*, Ky., 906 S.W.2d 694 (1994) (overruled in part, *Commonwealth v. Barroso*, Ky., 122 S.W.3d 554 (2003)) (holding that no double jeopardy violation occurred due to defendant's conviction of murder and arson). There was no error.

### PENALTY PHASE TESTIMONY

██ Lastly, Appellant claims error because the father of Appellant's children was not allowed to testify in the penalty phase as to the effect he felt the death penalty would have on their children. Appellant claims that this testimony constituted relevant mitigating evidence comparable to a victim's impact statement.

██ "*Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), provides that nonstatutory mitigating evidence must be admitted only if it is relevant to the defendant's character, record or any of the circumstances of the offense." *Smith v. Commonwealth*, Ky., 734 S.W.2d 437, 451–452 (1987). The testimony of Appellant's boyfriend presumably would not have been relevant to Appellant's character, and therefore, was properly excluded by the trial court. We also note that the testimony was not preserved by avowal and therefore, we are unable to speculate as to the exact nature of that testimony. KRE 103(a)(2); *Commonwealth v. Ferrell*, Ky., 17 S.W.3d 520 (2000).

### CONCLUSION

For the reasons stated above, we hereby reverse the judgment of conviction in the Jefferson Circuit Court and remand this case for proceedings consistent with this opinion.

LAMBERT, C.J.; COOPER and JOHNSTONE, JJ., concur.

KELLER, J., concurs by separate opinion.

WINTERSHEIMER, J., dissents by separate opinion, with GRAVES, J., joining that dissent.

Concurring opinion by Justice KELLER.

I concur but write separately because I do not agree that evidence at the penalty phase is admissible only if relevant to Appellant's character. The 1998 amendment to KRS 532.055 makes the statute applicable to all felony cases, including capital cases.[1] Accordingly, "[t]he defendant may introduce evidence in mitigation or *in support of leniency* [.]"[2] Appellant claims error because the father of her children was not allowed to testify about the effect the death penalty would have on the children. I agree with the majority's opinion that such testimony is not relevant to Appellant's character, but it is clearly "evidence in support of leniency," and therefore admissible. But, inasmuch as Appellant failed to offer the excluded testimony by avowal, the issue concerning its exclusion,

---

1. *St. Clair v. Commonwealth*, Ky., 140 S.W.3d 510, 562.

2. KRS 532.055(2)(b) (emphasis added).

as noted in the majority opinion, was not appropriately preserved for this Court's review.[3] However, if Appellant is again convicted of a capital offense on retrial, she should be allowed to present such testimony in support of leniency in the penalty phase of the trial.

Dissenting opinion by Justice WINTERSHEIMER.

I must respectfully dissent from the majority opinion because it was not error for the trial judge to deny Quarels the right to testify on her own behalf. At her second trial, Quarels was convicted by a jury and sentenced to life without parole for aggravated murder, twenty years for first-degree arson and ten years for each of two criminal attempts to murder.

She had been indicted for events occurring in 1998, when she doused the bed in which she and her three children lay with lighter fluid and ignited it. Quarels and two of the children survived, but her two-year old child died in the resulting fire. Prior to her first trial, Quarels made repeated emotional outbursts and became disruptive and hysterical. Her defense counsel advised the court that the attorney/client relationship had completely broken down and the trial judge determined that Quarels was unable to continue in her present state and ordered a competency evaluation. The result was a mistrial and eventually the Kentucky Correctional Psychiatric Center determined that she was competent to stand trial.

At the second trial which occurred almost a year later, Quarels continued to have outbursts throughout the trial and was forcibly removed from the courtroom on at least one occasion. She stated on numerous occasions before the trial judge and at least one time in front of the jury her desire to testify on her own behalf. Defense counsel informed the trial judge that she wished to testify after her defense case was closed and against the advice of counsel. Pursuant to *Jacobs v. Commonwealth*, Ky., 870 S.W.2d 412 (1994), the trial judge conducted an extensive hearing to determine whether she was capable of intelligently directing her own defense by making a decision to testify on her own behalf. Ultimately, the trial judge found that it would be very detrimental to her defense case if she were to testify based on her previous outbursts and inability to control her emotions. Quarels then stated she wished to fire her attorney and represent herself so that she could take the stand.

I find that the rationale of *Jacobs, supra*, which was first articulated in *Dean v. Commonwealth*, Ky., 777 S.W.2d 900 (1989), to be controlling in this situation. In *Dean*, this Court explained that "... even if a defendant is found competent to stand trial, he may not be capable of making an intelligent decision about his defense." *Jacobs*, 870 S.W.2d at 418, *quoting Dean, supra*. This Court went on to say that "... although found competent to stand trial, the trial court shall hold a hearing as to ability to voluntarily and intelligently understand and waive defense" which was pertinent in that case. Accordingly, defense counsel requested a hearing to determine whether or not Quarels was capable of intelligently exercising her right to direct her own defense despite the advice of counsel to the contrary. Defense counsel was obviously concerned that if the defendant took the stand and testified, she would in effect be waiving the insanity defense counsel had been presenting since the beginning of this trial.

Clearly, the trial judge had serious reservations as to whether or not the defen-

---

3. *Commonwealth v. Ferrell*, Ky., 17 S.W.3d 520 (2000).

dant could appreciate the danger and/or damage that could be occasioned to her defense if she took the stand. Obviously, the trial judge in an attempt to act in the best interest of the defendant, engaged in a lengthy discussion with her before refusing to allow her to testify. The trial judge concluded that the defendant's desire to testify did not arise from the belief that it would aid her defense, but rather only serve a cathartic need to explain her crimes. The seriousness of the charges against Quarels cannot be brushed aside. In granting a new trial in these circumstances, it is apparent that the defendant could again face the possibility of the death sentence. There can be no doubt from the record in this case that the trial judge was simply trying to protect the defendant from her own foolish behavior. Quarels had repeatedly stated that she wanted the prosecutors to just kill her. Defense counsel had told the trial judge that the defendant was acting out an attempt to use the death penalty to commit suicide and that her testimony might have an effect on the insanity defense.

It is disappointing to realize that the majority in this case in choosing not to apply the reasoning of *Jacobs* could well be providing a distinct disservice to a criminal defendant. Both *Jacobs* and *Dean* involved the assertion of an insanity defense. The desperate attempts of the majority to fashion a distinction based on case-by-case treatment is unconvincing.

There is no question that the right of a defendant to testify at trial is zealously guarded by both defendants and the judiciary. However, as admitted in the majority opinion, the right to testify is not without restrictions or qualifications. Surely, consideration for the best interests of the defendant could be recognized as such an exception.

The noble language of the majority opinion is reduced to mere words without meaning. Serious public doubt should arise as to the underlying fairness of a trial where the best interests of the defendant are ignored by appellate fiat. Even the United States Sixth Circuit Court of Appeals has determined that the denial of a right to testify by a defendant can be harmless error in certain instances. *United States v. Diomande*, 40 Fed. Appx. 120, at 123 (6th Cir.2002) *quoting United States v. Reifsteck*, 841 F.2d 701 (6th Cir.1988). Academic discussions concerning the legal doctrines of harmless error and structural error are of little interest or value to a defendant who potentially faces a death sentence.

I would affirm the decision of the trial judge and the jury verdict in all respects.

GRAVES, J., joins this dissenting opinion.