RENDERED:  MARCH 20, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1511-MR

MARLON RENAY JACKSON, SR.                                    APPELLANT

v.
APPEAL FROM WARREN CIRCUIT COURT
HONORABLE JOSEPH B. HINES, JUDGE
ACTION NO. 22-CR-01241

COMMONWEALTH OF KENTUCKY                                    APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ECKERLE, A. JONES, AND L. JONES, JUDGES.

JONES, A., JUDGE:  On November 4, 2024, the Warren Circuit Court entered a

judgment sentencing Marlon Renay Jackson, Sr., to nine years' imprisonment

following a jury conviction for six counts of third-degree rape and one count of

promoting a sexual performance by a minor under eighteen.  Jackson now appeals,

arguing that the trial court improperly prevented him from presenting testimony he

wished to give during the guilt phase of trial and violated his constitutional right to be present during portions of the proceedings. Finding no reversible error, we affirm.

## I. BACKGROUND

In March 2022, the Kentucky Cabinet for Health and Family Services placed D.R.,[1] who was sixteen, and her infant child in custody of Jackson and his wife. The family moved to Warren County in May 2022. D.R. subsequently admitted to law enforcement officials that between May 2022 and July 2022, Jackson and D.R. engaged in sexual intercourse at least six times, and that at least of two had been recorded. Jackson was subsequently indicted and charged with third-degree rape in violation of KRS[2] 510.060(1)(d)[3] and promoting a sexual

---

[1] Because the victim was a juvenile at the time of Jackson's crimes, we refer to her with initials in conformity with Kentucky Rule of Appellate Procedure ("RAP") 31(B).

[2] Kentucky Revised Statutes.

[3] KRS 510.060(1)(d) provides:

(1) A person is guilty of rape in the third degree when:

. . .

(d) Being a person in a position of authority or position of special trust, as defined in KRS 532.045, he or she engages in sexual intercourse with a minor under eighteen (18) years old with whom he or she comes into contact as a result of that position[.]

performance by a minor under eighteen in violation KRS 531.310(2)(a).[4]  Jackson

pleaded not guilty, and the case was tried before a jury on September 18-19, 2024.

In support of its case, the Commonwealth called D.R.  She testified about her relationship with Jackson, recounting, in detail, the six times the parties engaged in sexual intercourse between May 2022 and July 2022.  She also testified that some of these encounters were recorded, and two such recordings were played for the jury.  Emails exchanged between the two that referenced their sexual activities with one another were also admitted into evidence.

Jackson elected to testify in his own defense.  Before taking the stand, he provided his counsel with a list of questions he wanted asked during direct examination.  Defense counsel declined to ask those questions, believing the anticipated answers would amount to an admission of guilt, and advised the trial court of his concerns during a bench conference prior to Jackson's testimony.

---

[4] KRS 531.310 provides in relevant part:

> (1) A person is guilty of the use of a minor in a sexual performance if he employs, consents to, authorizes or induces a minor to engage in a sexual performance.
>
> (2) Use of a minor in a sexual performance is:
>
> > (a) A Class C felony if the minor so used is less than eighteen (18) years old at the time the minor engages in the prohibited activity[.]

Shortly after the conference concluded, the trial court reminded Jackson that he had the constitutional right not to testify and to instead remain silent. Further, it reminded Jackson:

> There has been an objection raised this morning in the testimony of [D.R.] as to the current status of the relationship. The Court has made a ruling today on the objection of relevance and the Court sustained that objection because it does not go to the elements of the offenses. So, again, you're advised that that has been ruled on.

Trial, September 19, 2024 at 10:09:32 – 10:10:11. Jackson acknowledged those points, reaffirmed his wish to testify, and proceeded to direct examination from his trial counsel.

Defense counsel kept Jackson's direct examination brief, focusing on his role as a foster parent and his care of the children placed in his custody, including D.R. Jackson testified that he had never been violent toward D.R. and stated that the videos introduced at trial were recorded by D.R., not by him. Defense counsel did not ask the questions Jackson had prepared.

The Commonwealth proceeded to cross-examine Jackson. Before the cross-examination could begin in earnest, the following exchange occurred:

JACKSON: Can I hold up a second? Please, ma'am.

COURT: Jackson, you need to answer the questions.

JACKSON: Okay. Sir, can I hold up a second here? I have a list of questions for my lawyer. My lawyer has them.

COURT: Mr. Jackson, this is the time in which you answer the questions . . . for the Commonwealth. Sir, you're going to be held in contempt, Mr. Jackson.

JACKSON: That's perfect. You can hold me in contempt if you want to. He has questions over there that he's supposed to ask me, and he has not asked these questions of me.

COURT: Mr. Jackson, again, I'm going to advise you that you're going to be held in contempt of court.

JACKSON: That is perfectly fine. I'm not about to sit here and let you guys railroad me.

Trial, September 19, 2024 at 10:14:38 – 10:14:42.

Jackson then stood up and slapped the microphone on the witness stand, bailiffs restrained him and took him to the holding cell, and the courtroom was cleared. A bench conference followed. While the microphone did not catch all of what was said, Jackson's counsel reiterated that he could not ethically ask Jackson the listed questions, and represented he had previously discussed that point with Jackson; and the Commonwealth asserted that, "Based on the previously attempted testimony of [D.R.] and the defendant attempting to not answer the Commonwealth's questions, but instead appear to be providing [unintelligible] of

his own, I do think it is likely that those questions would be inadmissible."[5]  The trial court directed Jackson's counsel to conference with Jackson about whether Jackson could conform his behavior to courtroom standards.

Afterward, Jackson was brought back to the courtroom outside the presence of the jury.  The trial court explained to Jackson that if he had additional outbursts, he ran the risk of being ejected from the courtroom.  The trial court again explained to Jackson that "consent" was not an element of the offenses for which Jackson was being tried.  The trial court also explained it did not know what Jackson's intended testimony was going to be, but that Jackson's counsel believed it would be unethical and would elicit irrelevant testimony.  As such, the trial court invited Jackson to make a proffer and avowal of his desired testimony outside the presence of the jury to enable it to assess whether Jackson's intended testimony was ethically appropriate and otherwise admissible at trial.  However, Jackson declined the trial court's invitation to proffer his testimony.  He insisted he would only give his testimony in the presence of the jury, and that he had the right to do so.[6]

---

[5] Trial, September 19, 2024 at 10:18:00 – 10:18:19.

[6] *See id.* at 10:49:15 – 10:56:55.

After a brief recess, the trial court again asked Jackson if he wished to put his desired testimony on the record outside the presence of the jury to enable it to determine the admissibility of the testimony. It further explained that if Jackson refused to do so, his refusal could affect whether Jackson would be permitted to argue in a future appeal that his inability to give his desired testimony constituted error.[7] The following exchange then ensued:

> JACKSON: Judge Hines, I am not stupid. What you, what all three of you just tried to do to me is reprehensible! It's absolutely fucking reprehensible!
>
> COURT: Okay, Mr. Jackson. Mr. Jackson, hold on. Mr. Jackson –
>
> JACKSON: [*Standing from his chair and thrusting his finger at the court*] The best thing for you to do is declare a mistrial. The best thing for you to do is declare a mistrial.[8]
>
> COURT: Okay, you understand we're going to proceed without you.
>
> JACKSON: Whatever you do, it does not matter. You did it on record. I got you on record.

Trial, September 19, 2024 at 12:51:53 – 12:52:26.

---

[7] *See id*. at 12:50:25 – 12:51:51.
[8] The trial court later indicated on the record that it regarded Jackson's statement as a motion for a mistrial, and that it was denying his motion. Jackson makes no appellate arguments relative to this issue.

When Jackson began shouting and stood from his chair, the bailiffs restrained him. Jackson was then removed from the courtroom again, and there was another recess. The bailiff, concerned for the safety of the courtroom, asked the trial court and opposing counsel if Jackson should be placed in handcuffs, but it was decided Jackson would instead view the remainder of the guilt phase of his trial – which ultimately only consisted of the reading of the jury instructions and closing arguments – from an adjacent courtroom through a closed-circuit television, where he would be required to contact the bailiff if he needed to consult with his counsel.

Roughly an hour later, at the conclusion of the recess, Jackson related through his counsel that he wished to give his desired testimony, but that he only wished to do so in front of the jury, not through a proffer. The trial court responded as follows:

> At this point, the court's going to find that he has waived his right to the avowal. The reason, at this point the court has put him in a separate room is because he became violent in this courtroom in the sense that when he was brought to the stand to testify, he slapped the microphone off of the desktop and then he became verbally abusive, and then, he was then afforded another opportunity, the court brought him out and explained to him that if he did not testify, he was waiving his, waiving his right to preserve the record for appeal. He then became, again, very verbally abusive, stood up, and became very aggressive in nature to the point where the bailiffs expressed concern about the safety of the folks in this

-8-

courtroom and asked the court to have leave to restrain him.

Trial, September 19, 2024 at 1:55:52 – 1:57:06.

The list of questions Jackson provided to his counsel is not of record. Notwithstanding, the substance of Jackson's desired testimony was made known to the trial court by Jackson's trial counsel. The following exchange occurred shortly after the trial court made its "waiver" finding set forth above:

> COURT: What is anticipated to be the testimony that he's wanting to address the court, or to have heard?
>
> COUNSEL: Um, he keeps mentioning the witness tampering of, where they asked [D.R.] or told [D.R.] they'd take her child away if she didn't tell the truth. Um, that was put in the motion that he filed, and this court ruled on that motion. So, in my mind, that's a legal argument, it's not testimony, you know, as far as submitting evidence to a jury. Um, so that's not a question that you would ask at trial. The other questions are how they feel about each other, the status of their relationship, things that have gone on since, things of that nature. Again, um, not only would that not disprove any of the allegations, it would tend to be an admission that there was a relationship, that this did in fact take place. So, to ask him the question that amounts to an admission if answered, um, would be ineffective assistance of counsel. So, I refuse to do that. As his counsel, it's up to me to decide what questions are asked or not. And so, that's my stance on it. I don't know what else to say on it but that.
>
> COURT: Well, I don't know what the jury's going to do. None of us know what the jury's ultimately going to decide at this juncture. But if we got into a penalty

phase, I could foresee that some of these issues could be relevant. It could be heard in mitigation.

Trial, September 19, 2024, 1:57:20 – 1:59:24.

Jackson did testify during the penalty phase of his trial, albeit briefly. When prompted by his counsel to tell the jury about his relationship with D.R., he responded:

> I saw [D.R.] as just another foster kid. I didn't see anything romantic as far as, um, she is concerned. Um, I did, I did come to absolutely be in love with [D.R.]. You guys didn't get to hear my testimony. They stopped it. They didn't want you guys to hear what I had to say. Because had you guys heard what I had to say, your verdict would've been different. There's nothing I can do right now but appeal what's happened here today. What you guys participated in was highly unethical. My lawyer, the prosecutor, as well as the judge, they did some very unethical behavior in here today. I'm sorry you guys didn't get to hear the whole story.

Trial, September 19, 2024, 6:56:01 – 6:57:33.

Consistent with the jury's verdict, the trial court sentenced Jackson to nine years' imprisonment. This appeal followed.

## II. ANALYSIS

Jackson asserts two primary assignments of error. First, he argues that he was denied his "right" to give the jury, in his words, "the whole story" during his testimony in the guilt phase of trial. Second, he contends that he was

-10-

improperly excluded from the courtroom during the remainder of the guilt phase after giving the testimony he did. We address each argument in turn.

As to his testimony, or lack thereof, Jackson argues that the record fails to demonstrate that the trial court properly ascertained that he "voluntarily waived" his right to testify on his own behalf. In his brief, Jackson elaborates:

> [T]he Judge did an inquiry of weather [sic] [Jackson] would like to give his testimony outside the presence of the Jury. [Jackson] was not told that if he failed to do this, he would waive his right to testify altogether. [Jackson] wanted to tell his side of the story and had a constitutional right to do so and invoked that right when he took the witness stand. When it became apparent [Jackson] and his attorney had a disagreement about his testimony the Judge should have inquired into why [Jackson's] trial testimony was being excluded by this attorney. This error is palpable[.]

Appt. Br. at 15.

This argument was not preserved. We reverse under the palpable error standard only when a "manifest injustice has resulted from the error." RCr[9] 10.26. "[T]he required showing is probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006). When we engage in palpable error review, our "focus is on what happened and whether the defect is so

---

[9] Kentucky Rules of Criminal Procedure.

manifest, fundamental and unambiguous that it threatens the integrity of the judicial process." *Baumia v. Commonwealth*, 402 S.W.3d 530, 542 (Ky. 2013).

The United States Constitution guarantees a criminal defendant "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 2146, 90 L. Ed. 2d 636 (1986) (citation omitted). This does not mean, however, that a criminal defendant may offer any testimony he wishes in his defense. "The accused does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Montana v. Egelhoff*, 518 U.S. 37, 42, 116 S. Ct. 2013, 2017, 135 L. Ed. 2d 361 (1996) (quoting *Taylor v. Illinois*, 484 U.S. 400, 410, 108 S. Ct. 646, 653, 98 L. Ed. 2d 798 (1988)).

Jackson's testimony was, like all other testimony, "legitimately subject to applicable state procedural and evidentiary rules." *Quarels v. Commonwealth*, 142 S.W.3d 73, 80 (Ky. 2004) (citation omitted). Those rules (and their application) pose no constitutional problem so long as they are neither "arbitrary" nor "disproportionate to the purposes they are designed to serve." *Rock v. Arkansas*, 483 U.S. 44, 56, 107 S. Ct. 2704, 2711, 97 L. Ed. 2d 37 (1987).

Importantly, Jackson was not prevented from testifying altogether. Defense counsel did question him. However, defense counsel did not ask Jackson everything Jackson wanted him to ask. After Jackson raised concerns about

defense counsel's direct, the trial court told him he could provide the testimony outside the jury's presence so the trial court could evaluate its admissibility, an offer Jackson refused.

To the extent Jackson is taking issue with the trial court's determination that he waived his right to proffer his desired testimony through avowal, we find no error in that regard. In its most basic sense, a waiver is "a voluntary and intentional surrender or relinquishment of a known right, or an election to forego an advantage which the party at his option might have demanded or insisted upon." *Greathouse v. Shreve*, 891 S.W.2d 387, 390 (Ky. 1995) (internal quotation marks and citation omitted). Jackson was informed – at length – of his right to proffer his desired testimony through avowal, and why doing so was necessary; and Jackson voluntarily declined to exercise his right when, following an outburst and display of profanity, he told the trial court that "It does not matter."

In any case, despite the trial court's finding that Jackson *waived* his right to proffer his desired testimony, it is evident from what is set forth above that the trial court alternatively *excluded* Jackson's desired testimony. Jackson's argument that the trial court and defense counsel unconstitutionally deprived him of his right to tell the jury "his side of the story" requires us to consider the subjects about which Jackson wished to testify.

As explained in Jackson's appellant brief, his defense counsel informed the trial court that Jackson wanted to testify about: (1) his belief that "the Commonwealth tampered with D.R.'s testimony because she was allegedly told her son would be taken from her custody is [sic] she did not testify truthfully,"[10] and (2) "his love of D.R. and their relationship."[11]  Accordingly, we will now address the more substantive issue of whether the trial court's exclusion of this evidence resulted in manifest injustice.

The alleged witness tampering was the basis of an unsuccessful *pro se* motion to dismiss that Jackson filed in this case on August 23, 2024.[12]  We are

---

[10] Appt. Br. at 10.

[11] Appt. Br. at 3.

[12] In his *pro se* motion Jackson represented that during two phone calls that he had shared with D.R. during the pendency of this case, D.R. had informed him:

> [T]hat she was sorry that she was the cause of his being there [i.e., in jail] but that DCBS[ ] rep. Rebecca threatened to take her infant son away should she not cooperate i.e.: change her story from nothing happened which she had been saying for months to something happened.

Record at 167.  And he concluded his motion as follows:

> There is no victim in this case.  She neither acts like, talks like nor feels like a victim of the movant, instead it is the state that is forcing her to do things she would not normally do, say things she would not normally say and otherwise disrupting her life as they are the movant since their lives are connected through love.  In conclusion both victim and movant are requesting this court dismiss all charges with prejudice so that they may both enjoy life and liberty together.

Record at 168.

-14-

uncertain what *admissible* testimony Jackson could have provided on this subject.

Jackson was not present when D.R. spoke with either law enforcement or the social worker. Likewise, Jackson's opinion regarding D.R.'s stance with respect to the charges against him was both speculative and irrelevant. D.R. was the proper witness to respond to questions on this subject, not Jackson. And Jackson has not presented any argument regarding D.R.'s testimony.[13]

Jackson also wanted to testify about the fact that he and D.R. had fallen in love with each other, and wanted to build a life together. Presumably, Jackson believed this testimony would convince the jury that the sexual intercourse that transpired between the two of them was consensual. Whether the parties were "in love" at the time the acts occurred is simply not relevant.[14] At best, this evidence might have tended to show that Jackson believed his sexual intercourse with D.R. was consensual. Because Jackson was D.R.'s foster parent, he occupied a position of authority or special trust within the meaning of KRS 510.060(1)(d), rendering D.R.'s willingness to participate in the relationship legally irrelevant to the rape charges. Likewise, the offense of promoting a sexual performance by a

---

[13] Whether cross-examining D.R. on these subjects would have been proper is questionable. *Saxton v. Commonwealth*, 671 S.W.3d 1 (Ky. 2022).

[14] *Dooley v. Commonwealth,* 626 S.W.3d 487, 493 (Ky. 2021) ("Evidence is admissible only if it is relevant. Evidence is relevant if it is material and probative.").

minor under KRS 531.310(2)(a) requires only that the person employ, consent to, authorize, or induce a minor under eighteen to engage in a sexual performance.

Even if we were to assume, *arguendo*, that the circuit court erred in limiting Jackson's testimony, any such error would not warrant relief. Jackson seeks review under the palpable error standard, which requires a showing of manifest injustice. RCr 10.26. In light of the record before us, Jackson cannot make that showing. The evidence of Jackson's guilt was overwhelming. The jury viewed videos depicting sexual encounters between Jackson and D.R., and the Commonwealth introduced emails exchanged between the two that plainly referenced those encounters. Under these circumstances, there is no substantial possibility that additional testimony from Jackson that he and D.R. were "in love" would have altered the outcome of the trial.

Finally, we address Jackson's argument that he is entitled to a new trial because he was not permitted to remain in the courtroom during the remainder of the guilt phase after giving the testimony he did. This argument is likewise unpreserved, and Jackson again seeks review under the palpable error standard.

While a criminal defendant has the constitutional right to be present at every critical stage of trial, that right may be waived through the defendant's own conduct. RCr 8.28(1); *Sloss v. Commonwealth*, 709 S.W.3d 102, 120 (Ky. 2024). Indeed, RCr 8.28 expressly permits a trial court to exclude a defendant who

persists in disruptive conduct after being warned that such behavior will result in removal. RCr 8.28(2). Nor is a formal evidentiary hearing required where the record otherwise supports the trial court's determination that the defendant waived the right to be present. *Sloss*, 709 S.W.3d at 122–23.

Here, the trial court explained on the record that Jackson was removed from the courtroom after he slapped a microphone from the witness stand, became verbally abusive, and behaved aggressively enough that courtroom bailiffs expressed concern for the safety of those present. The record supports the trial court's account. Under these circumstances, the court acted within its discretion in removing Jackson from the courtroom. As the United States Supreme Court has recognized, trial courts must have sufficient authority to maintain dignity, order, and decorum in the courtroom when faced with disruptive defendants. *Illinois v. Allen*, 397 U.S. 337, 343, 90 S. Ct. 1057, 1060-61, 90 L. Ed. 2d 353 (1970).

Additionally, we note that Jackson's absence from the courtroom only lasted through the reading of the jury instructions and the closing arguments. Jackson fails to explain how his presence during that limited time frame could, upon consideration of the whole case, have led to the substantial possibility of "a different result" for purposes of our manifest injustice standard. *See Martin*, 207 S.W.3d at 3. Upon consideration of the whole case, we are similarly at a loss.

### III. CONCLUSION

-17-

For the reasons expressed herein, we AFFIRM.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Adam Meyer
Assistant Public Advocate
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

J. Grant Burdette
Assistant Solicitor General
Frankfort, Kentucky